**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

 Andreas E. Moffett (*pro hac vice* application forthcoming)
   andreas@gutridesafier.com
 1775 Eye Street, NW Suite 1150
 Washington, DC 20006
 Telephone: (415) 639-9090
 Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN GABRIELLI, as an individual, on behalf of himself, the general public, and those similarly situated,<br><br>                   Plaintiff,<br><br>   v.<br><br>MOTOROLA MOBILITY LLC.,<br><br>                 Defendant. | Case No. 4:24-cv-09533-JST<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hon. Jon S. Tigar<br><br>Hearing Date: May 22, 2025<br>Hearing Time: 2:00 PM<br>Courtroom: Courtroom 6<br><br>Complaint Filed: December 31, 2024 |

# TABLE OF CONTENTS

I.    INTRODUCTION .............................................................................................. 1

II.   BACKGROUND ............................................................................................... 2

III.  ARGUMENT .................................................................................................... 3

      A.    Plaintiff Pleads a Concrete Injury-in-fact, Demonstrating Article III Standing. ......... 3

      B.    This Court Has Personal Jurisdiction Over Motorola. .................................. 6

      C.    Motorola's Scattershot 12(b)(6) Arguments Fail. ......................................... 8

            1.    Plaintiff Has Adequately Pled Common Law Privacy Claims. ...................... 9

                  a.    Plaintiff alleged that Motorola's invasion of his privacy was "intentional[] and without consent or other legal justification" ........... 9

                  b.    Motorola's 'bona fide error or mistake' argument is unsupported by fact and law. ................................................ 10

                  c.    Plaintiff alleged "egregious or highly offensive conduct" to sustain his privacy claims as a matter of law. ................................. 11

            2.    Plaintiff Has Adequately Pled CIPA Claims. ................................................ 13

                  a.    Plaintiff alleged intent under CIPA ................................................. 13

                  b.    CIPA Section 638.51 Is Not Limited To Telephones. ...................... 16

                  c.    CIPA Section 638.51 exception does not apply ............................... 17

            3.    Plaintiff Has Adequately Pled Breach of Contract Claims. ......................... 18

                  a.    Plaintiff sufficiently alleges that Motorola's Privacy Statement is an enforceable contract ............................................ 18

                  b.    Motorola's Terms of Use are not enforceable against Plaintiff. ......... 20

                  c.    The terms in Motorola's Terms of Use are unenforceable as a matter of law. ..................................................... 22

                  d.    Motorola's other contract defenses similarly fail. ........................... 22

            4.    Plaintiff's Fraud and Misrepresentation Claims are Sufficiently Pled. ......... 23

            5.    Plaintiff Sufficiently Pleads Trespass to Chattels. .................................... 24

            6.    Plaintiff's Unjust Enrichment Claim is not Barred as a Matter of Law ......... 24

      D.    Plaintiff Requests Leave to Amend If Necessary. ......................................... 25

IV.   CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024)...................... 32

*Aceves v. U.S. Bank Nat'l Ass'n*,
192 Cal. App. 4th 218 (2011) ................................................................................................ 24

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)................................................................................................................ 28

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ..................................................................................... 23, 27, 28

*Briskin v. Shopify, Inc.*,
87 F.4th 404 (9th Cir. 2023) ................................................................................................ 9, 10

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................................... 18

*Bruton v. Gerber Prod. Co.*,
703 F. App'x 468 (9th Cir. 2017) .......................................................................................... 31

*Bui-Ford v. Tesla, Inc.*,
No. 4:23-CV-02321, 2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ....................................... 30

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)................................................................................................................. 8

*Calder v. Jones*,
465 U.S. 783 (1984)................................................................................................................. 9

*Castillo v. Seagate Tech., LLC*,
No. 16-cv-01958-RS, 2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sep. 14, 2016)........................ 25

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ................................................................................. 18

*Daneshmand v. City of San Juan Capistrano*,
60 Cal. App. 5th 923 (2021) .................................................................................................. 26

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ................................................................................................. 32

*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005) ........................................................................................................... 28

*Doe v. Amgen, Inc.*,
   No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) ........ 17, 18

*Doe v. WebGroup Czech, A.S.*,
   93 F.4th 442 (9th Cir. 2024) ........................................................................................ 9, 10

*Gabrielli v. Insider, Inc.*,
   No. 24-cv-01566 (ER), 2025 U.S. Dist. LEXIS 28788 (S.D.N.Y. Feb. 18, 2025) .......................... 6

*Greenley v. Kochava, Inc.*,
   684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................................................................... 21, 22

*Hart v. TWC Prod. & Tech. LLC*,
   526 F. Supp. 3d 592 (N.D. Cal. 2021) .................................................................................. 15

*Hawkins v. Kroger Co.*,
   906 F.3d 763 (9th Cir. 2018) ................................................................................................ 12

*Heeger v. Facebook Inc.*,
   509 F. Supp 3d 1182 (N.D. Cal. 2020) .................................................................................. 6

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) ........................................................................................................ 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   865 P.2d 633 (Cal. 1994) ..................................................................................................... 16

*In re Facebook Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ......................................................................................... passim

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................................. 31

*In re Google Location History Litig.*,
   514 F. Supp. 3d 1147 (N.D. Cal. 2021) ................................................................................ 14

*In re Meta Healthcare Pixel Litig.*,
   713 F. Supp. 3d 650 (N.D. Cal. 2024) .................................................................................. 31

*In re Southland Supply, Inc.*,
   657 F.2d 1076 (9th Cir. 1981) .............................................................................................. 26

*James v. Walt Disney Co.*,
   701 F. Supp. 3d 942 (N.D. Cal. 2023) .................................................................................. 17

*Jayone Foods, Inc. v. Aekyung Indus. Co. Ltd.*,
   31 Cal. App. 5th 543 (2019) ................................................................................................. 11

*Jones v. Ford Motor Co.*,
   85 F.4th 570 (9th Cir. 2023) ............................................................................................. 3, 6

*Katz-Lacabe v. Oracle America, Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................ 14, 31

*Klein v. Meta Platforms, Inc.*,
    No. 20-cv-08570-JD, 2025 U.S. Dist. LEXIS 13366 (N.D. Cal. Jan. 24, 2025) ............................ 5

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
    No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024) ........... 18

*Lake v. Lake*,
    817 F.2d 1416 (9th Cir. 1987) ................................................................................ 8

*Landon v. TSC Acquisition Corp.*,
    No. 2:23-cv-01377-SVW-PD, 2024 U.S. Dist. LEXIS 237108 (C.D. Cal. Nov. 1, 2024)............ 30

*Licea v. Cinmar, LLC*,
    659 F. Supp. 3d 1096 (C.D. Cal. 2023) .................................................................... 4

*LNS Enters. LLC v. Continental Motors, Inc.*,
    22 F.4th 852 (9th Cir. 2022) ................................................................................. 7

*Matera v. Google Inc.*,
    No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778 (N.D. Cal. Sep. 23, 2016)..................... 4

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ............................................................................. 7, 8

*Meeks v. Experian Info. Servs., Inc.*,
    Nos. 21-17023, 22-15028, 2022 U.S. App. LEXIS 35650 (9th Cir. Dec. 27, 2022)..................... 25

*Mirmalek v. L.A. Times Communs. LLC*,
    No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .............. 21, 22

*Muha v. Experian Information Solutions*, *Inc.*,
    106 Cal. App. 5th 199 (2024), ................................................................................ 5

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) .............................................................................. 26

*Nguyen v. Stephens Institute*,
    529 F. Supp. 3d 1047 (N.D. Cal. 2021) .................................................................... 13

*Nish Noroian Farms v. Agric. Lab. Rels. Bd.*,
    35 Cal. 3d 726 (1984) ........................................................................................ 27

*OTO, L.L.C. v. Kho*,
    8 Cal. 5th 111 (2019) ......................................................................................... 28

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ............................................................................... 8

*Raffin v. Medicredit, Inc.*,
No. CV 15-4912-GHK (PJWx), 2016 U.S. Dist. LEXIS 181819 (C.D. Cal. Dec. 19, 2016) .......... 4

*Residence Mut. Ins. Co. v. Air Vent*,
2022 Cal. Super. LEXIS 98962 ................................................................................................ 11

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) ...................... 18

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ............................ 16

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504, 2024 WL 4905217 (Cal. Super. L.A. Cty. Nov. 21, 2024) ............................ 6

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) ......................... 15

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) ......................... 5, 29

*Ronderos v. USF Reddaway, Inc.*,
114 F.4th 1080 (9th Cir. 2024) .............................................................................................. 28

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .............................................................................................. 32

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ...................................................................................... 8, 10, 11

*Shah v. Capital One Fin. Corp.*,
No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025) ....................... 32

*Shah v. Fandom, Inc.*,
No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ............... 21, 22

*Shahnaz Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025) .......... 18, 22

*Silver v. Stripe, Inc.*,
No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021) ................. 14

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) .................................................................................................. 3

*Smith v. Yeti Coolers, LLC*,
No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024) ..................... 19

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ..................... 1, 13

*Swarts v. Home Depot, Inc.*,
    689 F. Supp. 3d 732 (N.D. Cal. 2023) ............................................................. 8

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..................................................................................... 3, 6

*United States CFTC v. Monex Credit Co.*,
    931 F.3d 966 (9th Cir. 2019) ......................................................................... 23

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ......................................................................... 19

*Walden v. Fiore*,
    571 U.S. 277 (2014) ....................................................................................... 10

*Will Co. v. Ka Yeung Lee*,
    47 F.4th 917 (9th Cir. 2022) .......................................................................... 10

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ......................................................... 16

*Yahoo! Inc. v. La Ligue Contre le Racisme*,
    433 F.3d 1199 (9th Cir. 2006) ......................................................................... 9

*Yockey v. Salesforce, Inc.*,
    688 F. Supp. 3d 962 (N.D. Cal. 2023) ......................................................... 2, 4

**Statutes**

Cal. Penal Code § 638.50(b) ............................................................................. 20

Cal. Penal Code § 638.51(b) ...................................................................... 22, 23

Cal. Penal Code § 631 ...................................................................................... 17

Cal. Penal Code § 638.51(a) ............................................................................. 20

Cal. Penal Code § 631(a) .................................................................................. 16

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 9

# I.    INTRODUCTION

Motorola surreptitiously placed non-essential third-party tracking cookies on the devices of visitors to its website, ***even after*** those visitors had explicitly rejected such cookies. As a result, Motorola enabled third parties to collect visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" ***against their consent***. Class Action Complaint, ECF 1 ("CAC") at 3. Without any factual support, Motorola insists that this was either an error (contrary to Plaintiff's allegations that it acted intentionally) or "routine commercial behavior," and "simply how the internet operates." Motion to Dismiss ("MTD") at 4, 13, 15.

To be clear: "[Motorola], intentionally and without consent or other legal justification, caused cookies to be stored on Plaintiff's and Class members' browsers and devices, which enabled the Third Parties and Defendant to track and collect Plaintiff's and Class members' Private Communications and use the data collected for their own advantage." CAC at ¶ 181. Promising consumers one thing and doing the opposite can hardly be described as "routine," especially when it comes to sharing users' browsing activities and private communications with third parties. Indeed, no court has ever determined that such behavior is "routine," and, in fact, courts hold such conduct is a highly offensive invasion of privacy. *See St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive).

Motorola attempts to avoid liability for its blatant privacy violations by first arguing that Plaintiff lacks standing to sue, because he does not allege a "concrete injury" after his user data, including browsing behavior, was shared with third parties against his will. But "a concrete injury for Article III standing purposes occurs when [a] third party tracks a person's internet browser activity without authorization." *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969-70 (N.D. Cal. 2023) (cleaned up). Next, Motorola asserts that the Court lacks personal jurisdiction over it despite the fact that it included provisions in its Privacy Statement tailored to California residents. The motion finally claims pleading deficiencies across Plaintiff's causes of action, but those arguments ignore the

allegations of the complaint and request that the Court draw inferences on disputes factual issues in Motorola's favor.  Ultimately, these arguments are without merit, and are an attempt to distract from the central point of this case: Motorola placed "cookies and corresponding software code [and] allowed the Third Parties to access, intercept, read, learn, record, collect, and use Plaintiff's and Class members' Private Communications, even when consumers had previously chosen to 'Reject All non-essential cookies.'" CAC at ¶ 141. This Court should deny Motorola's motion in its entirety.

## II.    BACKGROUND

When consumers visit Motorola's ecommerce website (www.motorola.com, the "Website"), Motorola displays to them the following popup cookie consent banner in which Motorola offers Website users the option to reject all non-essential cookies:



(CAC at ¶ 23). Motorola's Privacy Statement (which was accessible via the blue hyperlink in the cookie consent banner shown above) again represented that Motorola would not use cookies without obtaining user consent and that users had the opportunity to "choose which types of cookies to enable or disable." (Id. at ¶ 33.)

Despite its repeated representations that it would not use non-essential cookies or share user information with third parties if Website users (such as Plaintiff) clicked the link to reject non-essential cookies, Motorola enabled several third parties – including Google LLC, ByteDance Ltd. (TikTok), Amazon.com, Inc. Howl Technologies, Inc., and Emplifi, Inc. (the "Third Parties") – to use cookies to collect those users' personal information "including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. (Id. at ¶¶ 2, 91.) The Third Parties used the personal information that they collected from Plaintiff and other Website users to create consumer profiles, target and personalize advertising, and

analyze the effectiveness of advertising – all for their own financial gain. (Id. ¶¶ 4, 34-64.) This type of tracking and data sharing is exactly what users who chose to reject all non-essential cookies on the Website sought to avoid. (Id. ¶ 5.)

## III.    ARGUMENT

### A.    Plaintiff Pleads a Concrete Injury-in-fact, Demonstrating Article III Standing.

Plaintiff establishes a concrete injury-in-fact because CIPA[1] provides a remedy for harms that bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American Courts"—i.e., invasions of privacy. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Indeed, invasions of privacy have long been recognized at common-law as concrete injuries. *Id.*; *see also Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) (quoting *TransUnion*); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020) ("[T]he legislative history and statutory text demonstrate that … the California legislature intended to protect … historical privacy rights when [it] passed CIPA."). As a result, "the relevant law is settled" that when a wiretapping statute like CIPA "codifies such substantive privacy rights," violating that statute "gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023). Thus, here, because Plaintiff alleges that Motorola "caus[ed] third-party cookies to be stored on consumers' devices and browsers that enabled the Third Parties to track and collect Plaintiff's Private Communications, including [his] browsing history, visit history, website interactions, [and] user input data" without and directly against Plaintiff's authorization (CAC at ¶ 164), he alleges "a concrete injury sufficient to confer standing." *In re Facebook Tracking*, 956 F.3d at 598-99; *see also Yockey*, 688 F. Supp. 3d at 969-70 ("[A] concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023) ("[V]iolations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact…"); *Raffin v. Medicredit, Inc.*, No. CV 15-4912, 2016 U.S. Dist. LEXIS 181819, at *3 (C.D. Cal. Dec. 19, 2016) ("[D]istrict courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a

---

[1] Defendant challenges only Plaintiff's standing to bring CIPA claims. It does not and cannot challenge Plaintiff's Article III standing to bring common law privacy, fraud and breach of contract claims.

CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statue."); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778, at *41 (N.D. Cal. Sep. 23, 2016) ("[A]lleged violations of Plaintiff's statutory rights under … CIPA constitute concrete injury in fact.").

Motorola's arguments completely ignore this controlling case law. First, it argues that the Complaint provides only hypothetical privacy violations and fails to "state what information was collected from Plaintiff," implying that Plaintiff's information was not collected and shared with the Third Parties. MTD at 8. That is untrue. Plaintiff explicitly pleads that Motorola "caused the Third Party tracking cookies to be placed on" his devices, which caused cookies to be "transmitted to the Third Parties along with [Plaintiff's] user data, enabling them to collect user data in real time that discloses Website visitors' Private Communications[.]" CAC at ¶¶ 26-27.

Motorola appears to conflate standing—i.e., whether there is a sufficient "concrete injury"—with the *measure of damages* for that injury. In so doing, Motorola ignores black-letter law. It concludes that Plaintiff alleges only "statutory damages" under CIPA, and that as a result, "Plaintiff has not alleged what actual damages he has suffered..." MTD at 7. But Plaintiff does not rely on the mere existence of statutory damages to confer an "injury", which courts have rejected as establishing Article III standing. Instead, the concrete invasions of plaintiffs' privacy rights provides the cognizable injury—statutory damages are simply a way to measure that injury. And, regardless, as even Motorola acknowledges, Plaintiff pleads that "his personal data. . . has a monetary value, which 'is measured as either the consumer's willingness to accept compensation to sell her data or the consumer's willingness to pay to protect her information.'" *Id.*, quoting CAC at ¶ 68; *see Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) (granting *class certification* when Plaintiffs' damages were based on "User's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection").

Many of Motorola's cited cases only highlight its confusion. For example, in *Klein v. Meta Platforms, Inc.*, No. 20-cv-08570-JD, 2025 U.S. Dist. LEXIS 13366, at *13 (N.D. Cal. Jan. 24, 2025), the court rejected an arbitrary valuation of "$5.00 a month for [Plaintiffs'] personal data" by plaintiff's damages expert. But *Klein* was decided at *class certification* (on a *Daubert* challenge to

plaintiff's expert) and concerns the *valuation* of an injury, not Article III standing. As for, *Muha v. Experian Information Solutions, Inc.*, 106 Cal. App. 5th 199, 209-10 (2024), it analyzes Article III standing under the Federal Fair Credit Reporting Act ("FCRA"), not CIPA. MTD at 6-7. That is a critical distinction because in *TransUnion* (which Motorola does not cite in its brief), the Supreme Court held that FCRA has no "close historical or common-law analogue for [Plaintiff's] asserted injury." 594 U.S. at 425. But, as noted above, the Supreme Court also held that invasions of privacy *do* bear the necessary historical relationship, 594 U.S. at 425, and the Ninth Circuit has explicitly held that CIPA violations are sufficient to confer Article III standing. *Jones*, 85 F.4th at 574.

Perhaps most confusingly of all, Motorola claims that "this same [FCRA] reasoning has recently been applied specifically to CIPA claims" in the unpublished California superior court decision of *Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 4905217, at *4 (Cal. Super. L.A. Cty. Nov. 21, 2024). Setting aside the fact that this non-citable decision does not even involve Article III (since it was filed in state court), Motorola still misstates the case. *Fountain9* did not hold that CIPA claims *never* involve concrete invasions of privacy; it simply held that the plaintiff did not allege one because the only information defendant allegedly collected was her IP address. *Id.* at *4. Other courts have similarly held that "there is no legally protected privacy interest in IP addresses." *Heeger v. Facebook Inc.*, 509 F. Supp 3d 1182, 1190 (N.D. Cal. 2020); *see also Gabrielli v. Insider, Inc.*, No. 24-cv-01566, 2025 U.S. Dist. LEXIS 28788, at *13 (S.D.N.Y. Feb. 18, 2025) (holding that "Gabrielli is correct that [ ] cases support the proposition that the unauthorized collection of web browsing information can certainly implicate a legally protected privacy interest sufficient to confer standing" but that an IP address alone was insufficient).[2] But here, Plaintiff did not just plead the disclosure of his IP address. Instead, Plaintiff alleges that Motorola intentionally permitted Third Parties to "collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and

---

[2] Motorola insinuates that Mr. Gabrielli's prior enforcement of his privacy rights against a different company in a different case somehow undercuts his credibility. That is an impermissible adverse inference at this stage. And even if it were permissible to make an inference based on his status as a plaintiff in another case, it is not the correct inference: Mr. Gabrielli actually cares about his privacy rights, and seeks to enforce them when he is harmed. Though inconvenient for privacy violators, there is absolutely nothing wrong with his conduct.

preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. CAC at ¶ 91. That is a concrete injury sufficient to show Plaintiff's Article III standing, as the Ninth Circuit has held. *See In re Facebook Tracking*, 956 F.3d at 599.

### B.   This Court Has Personal Jurisdiction Over Motorola.

Where—as here—the Defendant's personal jurisdiction challenge is based on written materials rather than an evidentiary hearing, Plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011). Plaintiff demonstrates a prima facie showing of facts sufficient to withstand Motorola's challenge to personal jurisdiction because Motorola has "sufficient minimum contacts with [California] that are relevant to the lawsuit," such that it is subject to specific jurisdiction on Plaintiff's claims. *LNS Enters. LLC v. Continental Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (analyzing the due process standard for the exercise of specific personal jurisdiction). "In contrast to general jurisdiction, specific jurisdiction covers defendants that are less intimately connected with a state, but that have sufficient minimum contacts with the state that are relevant to the lawsuit." *Id.*, citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Courts in the Ninth Circuit use a three-part test to analyze "whether a party's 'minimum contacts' meet the due process standard for the exercise of specific personal jurisdiction." *Id.*

First, Plaintiff must demonstrate that Motorola **either** "purposely availed itself of the privilege of conducting activities in California, **or** purposefully directed its activities towards California." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004) (emphasis added). These are "two distinct concepts," either of which is sufficient for establishing jurisdiction. *Id.*, *citing Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). Purposeful direction applies to Plaintiff's tort claims (privacy, fraud, and unjust enrichment claims), while purposeful availment applies to Plaintiff's contract claims. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 741 (N.D. Cal. 2023). Second, Plaintiff must show that his claims arise out of and relate to Motorola's forum-related activities. *Mavrix*, 647 F.3d 1218 at 1227-28. Finally, the exercise of jurisdiction must comport with fair play and substantial justice—in other words, it must be reasonable. *Id.* Once Plaintiff meets its burden to satisfy the first two prongs, the burden then shifts to Defendant to set forth a "compelling

case" that the exercise of jurisdiction would be unreasonable under the third prong. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

A defendant "purposefully directs" its activities at the forum state when it is alleged to have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Calder v. Jones*, 465 U.S. 783 (1984); *see also Yahoo! Inc. v. La Ligue Contre le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). Satisfying the first purposeful direction element, Plaintiff pleads "Defendant, intentionally and without consent or other legal justification, caused cookies to be stored on Plaintiff's and Class members' browsers and devices, which enabled the Third Parties and Defendant to track and collect Plaintiff's and Class members' Private Communications and use the data collected for their own advantage, as described above." CAC at ¶ 181.

Next, Plaintiff demonstrates that Motorola expressly aimed its Privacy Statement—in which Motorola misrepresented users' ability to reject non-essential cookies (*see* CAC at ¶¶ 23, 33, 76, and 146)—towards California. Motorola specifically, explicitly, and *solely* referred to California privacy law within its Privacy Statement, directly linking its privacy-related activities to the forum state and, consequently, to Plaintiff's claims. MTD 12-3 at 3. Although maintenance of a passive website alone does not establish purposeful direction, "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." *Doe v. WebGroup Czech, A.S.*, 93 F.4th 442, 452-53 (9th Cir. 2024) (citations omitted). To demonstrate that "something more," Plaintiff must show "some prioritization of the forum state, some differentiation of the forum state from other locations, or some focused dedication to the forum state which permits the conclusion that the defendant's suit-related conduct create[s] a substantial connection" with the forum. *See Briskin v. Shopify, Inc*., 87 F.4th 404, 423 (9th Cir. 2023)[3], citing *Walden v. Fiore*, 571 U.S. 277, 286-88 (2014).

Motorola's Privacy Statement explicitly represents that "Motorola does not use or disclose sensitive personal information of consumers for purposes other than those specified at Section

---

[3] The Ninth Circuit reheard *Shopify en banc* nearly six months ago on September 26, 2024. Here, Plaintiff has pled sufficient facts to demonstrate this Court's personal jurisdiction under current law. If this Court disagrees, however, it should not dismiss Plaintiff's claim out of hand, but rather await the Ninth Circuit's imminent *en banc* opinion, as the *Shopify* decision is likely to have direct applicability to personal jurisdiction in this case. 87 F.4th 404 (9th Cir. 2023).

7027(m) of the California Consumer Privacy Act Regulations." MTD 12-3 at 3. Motorola does not enumerate any *other* State's privacy laws in its Privacy Statement. *Id*. "[A]ddressing legal compliance [that is] relevant almost exclusively" to a certain jurisdiction on a website demonstrates active targeting of that jurisdiction. *Will Co. v. Ka Yeung Lee*, 47 F.4th 917, 923 (9th Cir. 2022). Indeed, Motorola's explicit consideration of the privacy rights of California consumers is "the sort of differential targeting that constitutes express aiming" at California. *Doe*, 93 F.4th at 454 (holding that developing a website in a manner intended to improve the viewing experience for United States visitors constituted express aiming at the United States). Plaintiff's privacy case addresses Motorola's violation of California privacy rights, which caused Plaintiff foreseeable harm in California. *See* CAC at ¶¶ 86-138. Thus, Plaintiff demonstrates Motorola's purposeful direction of its relevant activity towards this jurisdiction is sufficient for this Court to exercise specific jurisdiction.

Further, "[a] showing that a defendant purposefully availed [it]self of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. Motorola does not and cannot refute that it has purposefully availed itself of the privilege of conducting business activities in California. That is because Motorola solicits business in California. Indeed, "multiple direct sales transactions"—like those purchases that occur through the "[s]hop phones" and "[o]n sale" pages on Motorola's website[4]—are "sufficient to demonstrate purposeful availment." *Residence Mut. Ins. Co. v. Air Vent*, 2022 Cal. Super. LEXIS 98962 (*citing Jayone Foods, Inc. v. Aekyung Indus. Co. Ltd.*, 31 Cal. App. 5th 543, 548 (2019)). Separately, Plaintiff alleges that Motorola's Privacy Statement was an enforceable promise (CAC ¶ 163) made to California consumers (CAC ¶ 23), and conferred an economic benefit on Defendant in exchange for consideration (CAC ¶ 154), evidencing the solicitation, execution, or performance of a contract directly. *Schwarzenegger*, 374 F.3d at 802. For these reasons, Plaintiff has established a *prima facie* showing of specific jurisdiction over Motorola.

## C.    Motorola's Scattershot 12(b)(6) Arguments Fail.

---

[4] *See* www.motorola.com.

Motorola next presents a scattershot of 12(b)(6) arguments against Plaintiff's claims for privacy violations (Claims 1-4, MTD at 11-17); contract claims (Claims 7-8, MTD at 17-22); fraud and misrepresentation (Claim 5, MTD at 22-23); trespass to chattels (Claim 9; MTD at 23-24); and unjust enrichment (Claim 6; MTD at 24). Each of these arguments fail.

### 1.    Plaintiff Has Adequately Pled Common Law Privacy Claims.

The parties agree that claims for common law invasion of privacy and intrusion upon seclusion consist of two key elements: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606. *See also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285-97 (2009). Claimant easily satisfies both requirements.

### a.    Plaintiff alleged that Motorola's invasion of his privacy was "intentional[] and without consent or other legal justification".

Contrary to Defendant's assertions, Plaintiff alleges throughout his Complaint that Defendant acted intentionally to integrate its Website with third party resources that allowed the Third Parties to collect Website users' Private Information: "Defendant knew, or should have known, how the Website functioned, including the Third Party's resources it installed on the Website and the third-party cookies in use on the Website, through testing the Website, evaluating its performance metrics by means of its accounts with the Third Parties, or otherwise," and it knew that the Website was programmed to allow non-essential cookies to share user data with the Third Parties against their consent. CAC at ¶ 142; "[I]n violation of Defendant's representations otherwise . . . Defendant intentionally intruded upon the solitude or seclusion of Website users." *Id.* at ¶ 100; "Defendant's intentional intrusion into Plaintiff's and other users' Private Communications would be highly offensive to a reasonable person given that Defendant represented that Website users could "Reject All non-essential cookies" when, in fact, Defendant caused such third-party cookies to be stored on consumers' devices and browsers, and to be transmitted to third parties, even when consumers rejected all such cookies." *Id.* at ¶ 103; and "Defendant's conduct was intentional and intruded on Plaintiff's and users' Private Communications on the Website." *Id.* at ¶ 104; *see also* ¶¶ 2, 3, 14, 86, 98, 108, 116, 128, 139, 147, 151, 161, 164, 169, and 180-84 (plaintiff alleges intent).

1

### b. Motorola's 'bona fide error or mistake' argument is unsupported by fact and law.

2

Motorola argues, without factual support, that it is somehow entitled to exculpation because it made a "bona fide error or mistake" when it enabled the Third Parties to use cookies to collect user data when those users rejected cookies on the consent banner. MTD at 12. This argument is either an affirmative defense, which cannot support dismissal for the reasons discussed below, or is an impermissible request for the Court to infer Motorola's lack of intent in its favor, notwithstanding Plaintiff's allegations to the contrary. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 767 n.2 (9th Cir. 2018) (This Court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)").

If Motorola is exercising "the bona fide error affirmative defense," it has provided no factual basis to do so. Indeed, it does not even offer an explanation regarding how or why it offered Website users the option to reject non-essential cookies then completely disregarded users' rejections, even after it was placed on notice of its misconduct. Despite Motorola's repeated characterizations, at *no* point does Plaintiff "allege[] that this 'Reject All' button was not functioning properly"—i.e., that Defendant committed only an "error" or "mistake." MTD at 12, 13, 15, 21, and 23. Nor does Plaintiff allege that Defendant "took specific steps" to prevent the transmission of user data to the Third Parties. *Id.* at 15. On the contrary, Plaintiff alleges that Defendant's promises in the popup banner and Privacy Statement that users can reject all non-essential cookies when browsing the Website were "outright lies, designed to lull users into a false sense of security" and that "Defendant, intentionally and without consent or other legal justification, caused cookies to be stored on Plaintiff's and Class members' browsers and devices, which enabled the Third Parties and Defendant to track and collect Plaintiff's and Class members' Private Communications and use the data collected for their own advantage..." CAC at ¶¶ 2, 181. Even if Motorola had provided supporting facts, an affirmative defense cannot be raised in a motion to dismiss if it is based on disputed facts. *See, e.g., Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021).

### c. Plaintiff alleged "egregious or highly offensive conduct" to sustain his privacy claims as a matter of law.

Finally, Motorola, relying on *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012), asserts that "[e]ven assuming every item on the list[5] Plaintiff provides was tracked, none of it represents the type of 'highly sensitive' information to support a claim for invasion of privacy." MTD at 13. Privacy law has evolved since the *iPhone Application* case was decided in 2012. For example, in 2020, the Ninth Circuit held that users had a privacy interest in browsing data that Facebook surreptitiously collected. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 602-03. The court explained that the "use of cookies to track and compile internet browsing histories" can invade users' privacy because they enable "access to a category of information otherwise unknowable and implicate privacy concerns." *Id.* at 603.

Recent decisions have recognized that the tracking and amassing of online data about web users without consent is highly offensive. *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *17-18 (N.D. Cal. July 28, 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157-58 (N.D. Cal. 2021) (finding the

---

[5] Motorola refers to Plaintiff's list of the user Website browsing activities and private communications with Motorola that are transmitted to the Third Parties (defined as "Personal Information") which includes the following: "**Browsing History**: Information about the webpages a Website user visits, including the URLs, titles, and keywords associated with the webpages viewed, time spent on each page, and navigation patterns; **Visit History**: Information about the frequency and total number of visits to the Website; **Website Interactions**: Data on which links, buttons, or ads on the Website that a user clicks; **User Input Data**: The information the user entered into the Website's form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information; **Demographic Information**: Inferences about age, gender, and location based on browsing habits and interactions with Website content; **Interests and Preferences**: Insights into user interests based on the types of Website content viewed, products searched for, or topics engaged with; **Shopping Behavior**: Information about the Website products viewed or added to shopping carts; **Device Information**: Details about the Website user's device, such as the type of device (mobile, tablet, desktop), operating system, and browser type; **Referring URL**: Information about the website that referred the user to the Website; **Session Information**: Details about the user's current Website browsing session, including the exact date and time of the user's session, the session duration and actions taken on the Website during that session; **User Identifiers**: A unique ID that is used to recognize and track a specific Website user across different websites over time; and/or **Geolocation Data**: General location information based on the Website user's IP address or GPS data, if accessible." CAC at ¶ 18. The collection of any one of these items identified as Personal Information would constitute a privacy violation; collection of all this correlated data about users is certainly a privacy violation.

continuous collection of data when users turned off the "location history" setting was highly offensive); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *27 (N.D. Cal. May 21, 2021) (users have a privacy interest in their internet-wide browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy). This case is also far more compelling than a typical lack of consent case because Motorola solicited, then immediately disregarded, Plaintiff's rejection of consent. *See* CAC at ¶ 33. Here, Motorola sets the expectation of privacy *itself* by promising that it would not use third party cookies to share user data.

Motorola here fails to acknowledge that its invasion of privacy allowed the Third Parties to obtain users' Personal Information that tracked their browsing history and private communications on the Website, *even though Motorola represented in the popup cookie consent banner and Privacy Statement that it would not do so*. CAC at ¶¶ 1 and 33. None of the cases cited by Motorola even approach this scenario. Indeed, the facts here are more egregious than those in *In re Facebook Tracking Litigation*. Unlike in *Facebook*—where "Facebook's privacy disclosures at the time allegedly failed to acknowledge its tracking of logged-out users, **suggesting** that users' information would not be tracked"—here, Motorola explicitly told users that they could "Reject All" non-essential third-party tracking cookies. *Cf. In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 602 (emphasis added). That is the difference between an omission and a falsehood. It is also the difference between a question of consent and a wanton disregard for Plaintiff's express rejection of tracking. Thus, it stands to reason that if Facebook's *omission* gave rise to a "cognizable privacy interest," then Motorola's *affirmative falsehood* must as well.

In any event, the question of whether an intrusion is "highly offensive" is one that courts do not resolve on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994); *see also In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry" before concluding it "cannot be resolved at the pleading stage"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury").

### 2.    Plaintiff Has Adequately Pled CIPA Claims.

Plaintiff alleges two claims under CIPA. First, Plaintiff alleges a wiretapping claim under the fourth prong of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up).[6] Second, Plaintiff alleges that Defendant's conduct violates CIPA § 638.51, which prohibits the unconsented to installation and use of "pen registers" and "trap and trace devices." Each of Defendant's challenges to these claims are meritless.

#### a.    Plaintiff alleged intent under CIPA

First, Motorola repeats its lack of intent argument and contends that Plaintiff must allege that Motorola intended to aid and abet the Third Parties in wiretapping Website users' communications and that he failed to do so. MTD at 14, 15. But this ignores the plain text of the statute which "does not include an intent standard." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *20. Indeed, this same argument was rejected by Judge Chen in case with similar factual allegations, *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953 (N.D. Cal. 2023). In *James*, the plaintiff brought CIPA claims under Section 631 against the Walt Disney Company for enabling a third-party to intercept data provided by website users including "search terms entered," "pages viewed," and other data similar to Plaintiff's allegations here. *Id*. at 945-46. There, like here, the defendant argued that Defendant "cannot be held liable under . . . CIPA unless it *intended* to have [a third party] intercept the information at issue." *Id*. at 953. The Court rejected that argument, noting that plaintiff pled sufficient intent, because "it can be reasonably inferred that [Defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information. . . . so that [Defendant] could market to and attract new customers." *Id*. at 954. So too here. Plaintiff alleged that Defendant

---

[6] Motorola argues that it cannot be liable under CIPA because it cannot eavesdrop on its own conversations. MTD at 14. However, Plaintiff does not allege that Motorola is eavesdropping. Instead, Plaintiff alleges that Motorola aiding and enabled the Third Parties to eavesdrop on user communications with Motorola against his consent. CAC at ¶¶ 120-123. This conduct gives rise to CIPA liability under the fourth prong. Id. at ¶ 113.

"voluntarily integrated third-party resources from the Third Parties into its [website] programming," which was "done so pursuant to agreements between Defendant and those Third Parties," and resulted in the collection of user data that was valuable to Motorola and the Third Parties. CAC at ¶¶ 14, 65-69.

The decision in *James* is consistent with other decisions from this Circuit holding that intent under CIPA is satisfied by pleading that Defendant intentionally "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc.*, No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *4 (N.D. Cal. Oct. 23, 2019) ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless of whether Defendant had the specific intent to enable *unlawful* conduct, courts routinely find sufficient allegations that the defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Amgen*, 2024 U.S. Dist. LEXIS 144579, at *5.

Because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," the Ninth Circuit's analysis of the intent requirement in the Wiretap Act is instructive. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quoting *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018)). "The Ninth Circuit rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires "an intentional act, defined as an act that is being done on purpose." *Shahnaz Zarif v. Hwareh.com, Inc*., No. 23-cv-0565, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal. Feb. 12, 2025) (quoting *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015)).

Defendant relies on one case—*Smith v. Yeti Coolers, LLC*, No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *11 (N.D. Cal. Oct. 21, 2024)—to support its interpretation of CIPA's intent requirement. First, *Yeti* is factually distinct: there, unlike here, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that "incorporates customers' financial information into its fraud prevention system, which it then markets

to merchants without customers' consent" to violate the statute. *Id.* at *1. The Court concluded that the plaintiff failed to allege that the defendant was "acting with the third party *in order* to have the third party perform acts that violate the statute." *Id.* at *12. In other words, Court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its Website. Here, Motorola integrated the Third Parties' software that placed and transmitted cookies into its Website *in order* to obtain user data for advertising and analytics functions. CAC at ¶¶ 14 and 19. Defendant did not disable this software or prevent the Third Parties from obtaining user data even after it solicited and obtained users' rejections of non-essential cookies. *Id.* at ¶¶ 1-3. Defendant cannot claim that did not intend to enable the Third Parties to wiretap and eavesdrop on users' Personal Communications since it installed the Third Party code on its Website to do exactly that.

Second, Defendant's characterization of the holding in *Yeti* is contrary to the prevailing standard in this Circuit discussed above. The Defendant in *Yeti*, like Motorola does here, argued that "Plaintiff must allege that Defendant acted with "'specific intent to commit the unlawful acts'" *Id.* at *11. But the plaintiff, by contrast, argued that CIPA did not require specific intent. *Id.* The court drew a line down the middle, acknowledging that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting. . . [but] other language in [CIPA's] fourth clause does require *some* level of knowledge and intent." *Id*. (emphasis added). Here, Defendant Plaintiff alleges more than "some" level of knowledge; he pled that "Defendant knew, or should have known, how the Website functioned, including the Third Party's resources it installed on the Website and the third-party cookies in use on the Website, through testing the Website, evaluating its performance metrics by means of its accounts with the Third Parties, or otherwise, and knew, or should have known, that the Website's programming allowed the third-party cookies to be placed on users'—including Plaintiff's — browsers and devices and/or transmitted to the Third Parties along with users' Private Communications even after users attempted to "Reject All non-essential cookies", which Defendant promised its users they could do." CAC at ¶ 142. Further, Plaintiff alleged it was "Defendant's deliberate and purposeful scheme that facilitated the interceptions." CAC at ¶ 116. And ultimately, Plaintiff alleged that Motorola "enabled the third parties to track and collect Plaintiff's . . . Private

Communications" even after clicking Motorola's "Click Here to Reject All non-essential cookies" link. CAC at ¶ 164. Plaintiff has sufficiently pled Motorola's requisite intent under either standard.

### b.     CIPA Section 638.51 Is Not Limited To Telephones.

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiff adequately plead each element of this definition. Plaintiff's theory is that the Third Parties' cookies and the corresponding software code installed by Defendant on its Website operate as pen registers under the meaning of the statute because they are processes that record users' IP address and user-agent information, which is not the content of the electronic communications being transmitted from users' computers or smartphones to Motorola's website.

Defendant argues (contrary to its plain language) that the pen register statute is limited to telephones. MTD at 15-16. Courts in this District have repeatedly rejected this argument. *See, e.g.*, *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023). This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the *type of data* [collected]," but "vague and inclusive as to the form of *the collection tool*" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "Thus, the Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting," like Plaintiff alleges here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's *computer or smartphone* in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains

to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*.

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiff alleges that the Third Parties' cookies and the corresponding software code installed by Defendant on its Website are each a "device or process" as required by CIPA's definition of a pen register. *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 *with* CAC at ¶ 132 (explaining "cookies and the corresponding software code installed by Defendant on its Website are each 'pen registers' because they are 'device[s] or process[es]' that 'capture[d]' the 'routing, addressing, or signaling information'—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiff's and the Class's computers or devices."). Accordingly, Motorola's argument limiting pen register claims to telephones fails.

### c.   CIPA Section 638.51 exception does not apply.

Next, Motorola claims that it is exempt from § 638.50(b), on the grounds that an unauthorized pen register is permissible "[t]o operate, maintain, and test a wire or electronic communication service[,]" MTD at 16, citing Cal. Penal Code § 638.51(b). But "this exemption only applies to a 'provider of [an] electronic or wire communication service,' and [Defendant] fails to establish it meets this definition." *Shahnaz Zarif*, 2025 U.S. Dist. LEXIS 26519, at *31; *see Mirmalek*, 2024 US Dist. LEXIS 227378, at *13, *quoting* Cal. Penal Code § 638.51(b) (rejecting application of exemption where "Defendant fails to establish that it is a 'provider of electronic or wire communication service[.]'"). Indeed, the Complaint alleges no facts from which this Court may conclude that Motorola is a "provider of [an] electronic or wire communication service." *See generally* CAC, which means that "dismissal based on [this] affirmative defense" is not permitted. *United States CFTC v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019). Further, Motorola's argument that "Plaintiff has failed to plead around this is exception that . . . . by alleging facts that would preclude the applicability of the exception[,]" necessarily fails "because Rule 8 does not require plaintiffs to plead around affirmative defenses." *Id.* at 972.

3.    **Plaintiff Has Adequately Pled Breach of Contract Claims.**

a.    **Plaintiff sufficiently alleges that Motorola's Privacy Statement is an enforceable contract.**

Plaintiff alleges breach of contract claims based on Motorola's failure to perform the promises it made in its Privacy Statement. "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 124 Cal. Rptr. 3d 256, 250 P.3d 1115, 1121 (Cal. 2011). Plaintiff pleads each of these elements in his breach of contract claims; Motorola challenges only the existence of the contract.

Motorola's Privacy Statement is an enforceable contract against it. "Online contracts are subject to the same elemental principles of contract formation as paper contracts . . . . To form a contract under California [] law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (cleaned up). Here, Plaintiff alleges that Motorola promised him that he could "Reject All non-essential cookies" in exchange for his personal data collected by Motorola's *essential* cookies. *See* CAC ¶¶ 23-27, 177 ("it caused Plaintiff and Class members to surrender more data *than they had otherwise bargained for.*") (emphasis added).

By its own terms, Motorola's "relationship with its users is governed by the Website's Privacy Statement," which provides: "This privacy statement applies to data collected through websites owned and operated by Motorola Mobility LLC... It also describes your choices regarding use, access, correction and deletion of your personal information, among other topics." CAC at ¶ 162. The Privacy Statement is accessible to all users as a hyperlink in the cookie consent banner which was "immediately displayed" to Plaintiff and other Website visitors. The banner referred to the "Motorola Website Privacy Statement" by underlined blue hyperlink *directly* next to the "Click Here to Reject All non-essential cookies" link that Plaintiff clicked, manifesting his assent to the Privacy Statement. *Id*. ¶¶ 23-27.[7] The Privacy Statement promised that "Motorola will acquire consent from you prior to using certain cookies during your Motorola website experience and/or will offer you the

---

[7] In any event, Plaintiff has ratified the contract by asserting breach of contract claims against Motorola in this lawsuit. Motorola cannot assert that it did not assent to the contract since it drafted it.

opportunity to choose which types of cookies to enable or disable," among other "enforceable promises that Defendant made to Plaintiff and Class Members." *Id*. at ¶¶ 23, 163. Further, "Plaintiff selected and clicked the 'Click Here to Reject All non-essential cookies' link[,]" and "[i]n reliance on these representations and promises, only then did Plaintiff continue browsing the Website." CAC at ¶¶ 72-73. That is an enforceable contract.

Alternatively, Motorola's clear promises that Plaintiff can "Click Here to Reject All non-essential cookies" and that Motorola "will offer you the opportunity to choose which types of cookies to enable or disable" in the Privacy Statement are *enforceable* promises because Motorola is estopped from arguing to the contrary. Promissory estoppel applies whenever a "promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance' would result in an 'injustice' if the promise were not enforced[.]'" *Aceves v. U.S. Bank Nat'l Ass'n*, 192 Cal. App. 4th 218 (2011). Here, Motorola made "a promise clear and unambiguous in its terms," (e.g., "Click Here to Reject All non-essential cookies," CAC at ¶ 72); there is "reliance by the party to whom the promise is made," (*"Plaintiff . . . relied to [his] detriment on Defendant's misrepresentation[,]" CAC ¶ 143); Plaintiff's "reliance [was] both reasonable and foreseeable," (Plaintiff "justifiably and reasonably relied on Defendant's misrepresentations[,]" CAC ¶ 148); and Plaintiff was "injured by his or her reliance" ("As a result, Plaintiff . . . provided more personal data than [he] would have otherwise." CAC ¶ 147).

In opposition, Motorola solely argues that its Privacy Statement is *not* an enforceable contract, because "[n]owhere in the Complaint does Plaintiff allege there was a bargain or exchange." MTD at 17. Motorola again misreads the Complaint. Plaintiff alleges that "Defendant's conduct in permitting the Third Parties to track and collect the Private Communications of Website users who chose to reject all cookies and tracking technologies **evaded the spirit of the bargain made between Defendant and Plaintiff** and Class members since it **caused Plaintiff and Class members to surrender more data than they had otherwise bargained for**." CAC at ¶ 166.

Plaintiff pled sufficient consideration in that he alleges that Motorola promised users that they could "Click Here to Reject All non-essential cookies," that "Motorola will acquire consent from you prior to using certain cookies . . . and/or will offer you the opportunity to choose which types of

cookies to enable or disable[,]" by, *inter alia*,[8] "[u]tiliz[ing] the cookie consent and control options offered by a Motorola website[.]" CAC at ¶¶ 166, 171. A "party's promise to be bound[,]" even in an online contract, "itself serves as adequate consideration[.]" *Meeks v. Experian Info. Servs., Inc.*, Nos. 21-17023, 22-15028, 2022 U.S. App. LEXIS 35650, at *6 (9th Cir. Dec. 27, 2022). In exchange, Plaintiff alleges that Motorola received a benefit—namely, that "Plaintiff and class members . . . surrendered [more] data" that they otherwise bargained for and that such data is valuable. CAC at ¶¶ 65-68, and 166. These allegations are sufficient to state a claim for breach of contract. *See Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 U.S. Dist. LEXIS 187428, at *29 (N.D. Cal. Sep. 14, 2016) (holding that plaintiffs provided consideration for the creation of a contract when they provided personal information to the defendant); *Daneshmand v. City of San Juan Capistrano*, 60 Cal. App. 5th 923, 934 (2021) (holding "the amount of consideration necessary in any case is merely that of a peppercorn"). In any event, "[t]he adequacy of consideration is generally a question of fact[.]" *In re Southland Supply, Inc.*, 657 F.2d 1076, 1081 (9th Cir. 1981).

### b.    Motorola's Terms of Use are not enforceable against Plaintiff.

Motorola next argues that this Court must enforce Motorola's Terms of Use ("TOU") against Plaintiff. Motorola does so under two theories; that (1) Plaintiff "consented to them," and that even if he did not, (2) the "written instrument" of Motorola's Privacy Statement "must be construed as a whole" to include Motorola's TOU. Neither argument has merit.

First, for an internet contract to be valid, that contract must give the would-be assenter actual notice of the agreement, or "put[] a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). Motorola failed to provide Plaintiff with either the actual or inquiry notice sufficient to bind him to the TOU. At no point

---

[8] Motorola appears to argue that the "specific steps" to opt of cookies listed in the Privacy Statement must *all* be followed before Plaintiff can plausibly allege he rejected third-party tracking cookies. *See* MTD at 20 ("Plaintiff alleges only that he clicked the [Reject All] button, but not that he undertook any of the *other* enumerated steps.") (emphasis added). Motorola's logic does not follow: the first option listed is to "[n]ot use [Motorola's] site at all, but its last option is to "[b]rowse our site using your browser's anonymous usage setting[.]" *Id.* It is contradictory to require a user to do all and leads to the inference—drawn in Plaintiff's favor—that Motorola's Privacy Statement lists *alternative* steps to reject cookies.

in Motorola's motion does it argue (or prove) that Plaintiff had actual notice of the TOU.[9] An agreement can be formed "on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; **and** (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent **to those terms**." *Berman*, 30 F.4th at 856 (emphasis added). Motorola—despite asserting that Plaintiff consented to the TOU (Motion at 18 n. 6)—has shown *none* of the required elements to satisfy inquiry notice (nor do those elements appear on the face of the complaint). Motorola has not provided any facts sufficient for this Court to evaluate the conspicuousness of the TOU's notice whatsoever. It does not state where (if anywhere) the notice of the TOU appeared on the Website, or where Plaintiff would have otherwise encountered Motorola's TOU. Neither the cookie consent banner or the Privacy Policy mentions the TOU or provides a link to it. Without that information, this Court cannot find that Plaintiff was given reasonably conspicuous notice of the TOU.

Separately, Motorola has not alleged *any* action of Plaintiff that could reasonably be interpreted as him manifesting "unambiguous assent" to Motorola's TOU. Thus, the TOU fails both steps of the *Berman* inquiry notice test. Motorola, then, cannot show that Plaintiff assented to Motorola's TOU. Therefore, the TOU is not a valid internet contract between Plaintiff and Motorola, and cannot be the basis of Motorola's affirmative defense here.

Second, Motorola argues that Plaintiff's reliance on its Privacy Statement somehow ratifies Motorola's TOU, because "multiple writings must be considered together when part of the same contract" or because "where a writing refers to another document, that other document becomes constructively a part of the writing." MTD at 18 (citing *Nish Noroian Farms v. Agric. Lab. Rels. Bd.*, 35 Cal. 3d 726, 735 (1984)). Motorola's argument does not make sense. The TOU is not "part of the same contract" as the Privacy Statement, nor is it "constructively" a part of the Privacy Statement because Motorola *does not reference its TOU in its Privacy Statement at all*. *See* generally (MTD Ex. 12-3). While Motorola's TOU references and therefore could be said to constructively incorporate its

---

[9] Website users such as Plaintiff were provided notice of the Privacy Statement because Motorola provided a link to the Privacy Statement in the cookie popup banner immediately above the link to reject non-essential cookies. CAC at 2-3; *see also supra*. The Privacy Statement contains no reference or link to Motorola's TOU.

Privacy Statement (*see* MTD Ex. 12-4), the reverse is not true. Motorola has, thus, failed to show that the TOU is an enforceable contract against Plaintiff, or to establish that Plaintiff even had constructive notice of the TOU to begin with, let alone assented to it. *See generally Berman*.

### c. The terms in Motorola's Terms of Use are unenforceable as a matter of law.

Even if Motorola had established that Plaintiff assented to the TOU, the terms that Motorola seeks to enforce against Plaintiff are, as a matter of law, unenforceable. Motorola's class action waiver has been unenforceable in California *since 2005*, because "class action waivers are . . . unconscionable as unlawfully exculpatory [as] a principle of California law." *See Discover Bank v. Superior Court*, 36 Cal. 4th 148, 165 (2005).[10] Likewise, Motorola's unilateral imposition of a "one (1) year" statute of limitations for "any claim or cause of action," "regardless of any statute or law to the contrary" (*See* MTD at 19) is unconscionable because the "one year statute of limitations" is a "one-sided" benefit to Defendant that "severely restrict[s Plaintiff]," and "therefore, [is] substantively unconscionable." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1096 (9th Cir. 2024). So too with Motorola's unilateral limitation of liability. *See id*. And while Motorola's choice of law and forum selection clause might be enforceable if part of a properly formed contract between Motorola and Plaintiff, Motorola has not shown that the TOU can be enforced against Plaintiff *at all*.

### d. Motorola's other contract defenses similarly fail.

Motorola also argues that Plaintiff has failed to allege damages under *any* contract, referring to its Article III standing legal authority. Plaintiff has adequately alleged he suffered damages: "Plaintiff and the Class provided more personal data than they would have otherwise[,]" which can be valued by "either the consumer's willingness to accept compensation to sell her data or the consumer's willingness to pay to protect her information." CAC at ¶¶ 147, 68. *See also Rodriguez*, 2024 U.S. Dist. LEXIS 1290, at *35 (granting *class certification* when Plaintiffs' damages were based

---

[10] Although the Supreme Court has held that the Federal Arbitration Act preempts California's *Discover Bank* rule when an agreement to arbitrate is at issue, *see OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 123 (2019) (noting that *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) abrogated the California Supreme Court's holding that "class arbitration waivers in consumer contracts are unconscionable[.]"), here, there is no arbitration agreement. *See generally* Motorola TOU. Accordingly, the Federal Arbitration Act does not apply, precluding preemption under *Concepcion*. California's general prohibition on class action waivers therefore retains its full force and effect.

on "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection.").

Next, Motorola asserts that Plaintiff "cannot establish Motorola breached the purported agreement" because Plaintiff does not allege that he followed all the "steps" to personalize their Website in the Privacy Statement. MTD at 20. Regardless of the options listed in Motorola's Privacy Statement, *see supra* at n. 7 (one of which is not using the Website at all), Motorola unequivocally and unambiguously represented to Plaintiff that "if you prefer not to store cookies, you can choose to . . . [u]tilize the cookie consent and control options offered by a Motorola Website." CAC at ¶ 33. Motorola presented its "Click Here to Reject All non-essential cookies" link on a pop-up that Plaintiff saw and clicked. CAC at ¶¶ 71-72. But Motorola's "representations that consumers could 'Reject all non-essential cookies' . . . were untrue." Id. at ¶ 76. That is a breach.

Separately, regarding its breach of the implied covenant of good faith and fair dealing, Motorola also asserts that Plaintiff "cannot allege a breach[,]" because "Plaintiff . . . fails to allege that Motorola *prevented* Plaintiff from receiving any alleged 'benefit' under the alleged contract, or that Motorola was not acting in good faith (as opposed to, *inter alia*, there having been a bona error [sic] or mistake." MTD at 21. Motorola again misreads the Complaint. In fact, Plaintiff alleged "[d]espite their contractual promises to allow consumers to reject all non-essential cookies and other tracking technologies, Defendant took actions outside that contractual promise to deprive consumers, including Plaintiff and other users similarly situated, of benefits of their contract with Defendant." CAC at ¶ 175. Moreover, Plaintiff alleged "Defendant's conduct . . . evaded the spirit of the bargain made," (CAC at ¶ 177) which is sufficient to sustain a claim of breach of the implied covenant of good faith and fair dealing. *See, e.g., Landon v. TSC Acquisition Corp.*, No. 2:23-cv-01377, 2024 U.S. Dist. LEXIS 237108, at *29 (C.D. Cal. Nov. 1, 2024).

**4.     Plaintiff's Fraud and Misrepresentation Claims are Sufficiently Pled.**

Motorola argues that Plaintiff's fraud claim fails because he "does not identify any particular statement Motorola made to [him] that was allegedly false." MTD at 22. But the complaint plainly alleges that "[Motorola's] representation that consumers could reject non-essential cookies (including 'cookies and similar technologies [used] to personalize content and ads and analyze our traffic') if

they clicked the 'Click Here to Reject All non-essential cookies' link was untrue." CAC at ¶ 146. Motorola's other points are rehashed arguments claiming it lacked scienter[11] (contrary to Plaintiff's allegations at *inter alia*, *id.* at ¶¶ 2, 3, 14, 86, 98, 108, 116, 128, 139, 142, 147, 151, 161, 164, 169, 180-84) and repeating its arguments refused *supra* that Plaintiff lacks damages and an assertion that Motorola considers its own error "bona fide." None provide a reason to dismiss Plaintiff's fraud claims.

### 5.     Plaintiff Sufficiently Pleads Trespass to Chattels.

The parties agree on the elements necessary to plead a trespass to chattels claim based on access to a computing device. MTD at 23 (citing *Bui-Ford v. Tesla, Inc.*, No. 4:23-CV-02321, 2024 WL 694485, at *7 (N.D. Cal. Feb. 20, 2024)). Motorola challenges only the second element (damages) and contends that Plaintiff has not "alleged *any* damage or impaired functioning of his unidentified device(s) as a result of the alleged conduct, but rather only alleges claims of privacy damages." MTD at 24. Not so. Plaintiff alleged Motorola's trespass "resulted in harm . . . and caused Plaintiff and other users the following damages: Nominal damages for trespass; reduction of storage, disk space, and performance[]; and loss of value of Plaintiff's and other users' computing devices." CAC at ¶184. "An allegedly unconsented, surreptitious, non-temporary placement of software on devices that reduces storage has a measurable impact" sufficient to constitute damages for a trespass to chattels claim. *Compare In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (denying motion to dismiss trespass to chattels claim where, as here, Plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices[.]") *with* CAC at ¶184. As a result, Plaintiff has "alleged measurable harm from the loss of available storage space on his devices" sufficient to allege damages here. *Id.*, 713 F. Supp. 3d at 659 (internal quotations omitted).

### 6.     Plaintiff's Unjust Enrichment Claim is not Barred as a Matter of Law.

Motorola contends that Plaintiff's unjust enrichment claim—pled in the alternative—is barred as a matter of law. Not so. The Ninth Circuit has allowed independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019)

---

[11] Further, Plaintiff notes that intent to defraud "may be pled generally" under Rule 9(b).

(permitting an independent unjust enrichment claim alongside valid breach of contract and fraud claims). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. Here, Plaintiff may bring an unjust enrichment claim because he alleges that Defendant benefited from using his Private Information and that otherwise his remedies at law are inadequate. CAC ¶¶ at 153, 160. Indeed, if Motorola is correct that the Privacy Statement is not an enforceable contract between the parties, Plaintiff will lack a remedy at law for Motorola's misuse of his Private Information. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30-31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claims in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegation that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

### D.    Plaintiff Requests Leave to Amend If Necessary.

If a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys*., 957 F.2d 655, 658 (9th Cir. 1992). Defendant argues that amendment would be futile because he lacks standing to pursue his claims in federal court, but Plaintiff has suffered a concrete injury-in-fact as addressed above. Should this Court find any claims in the Complaint insufficient, Plaintiff requests leave to amend to cure the identified deficiencies.

### IV.    CONCLUSION

For the foregoing reasons, Motorola's motion to dismiss must be denied.

Dated: April 3, 2025

**GUTRIDE SAFIER LLP**

*/s/ Marie A. McCrary /*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Andreas E. Moffett (*pro hac vice* application forthcoming)
  andreas@gutridesafier.com
1775 Eye Street, NW Suite 1150
Washington, DC 20006
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*