1  Paul W. Sweeney, Jr. (SBN 112511)
   paul.sweeney@klgates.com
2  Zachary T. Timm (SBN 316564)
   zach.timm@klgates.com
3  Chief Coleman (SBN 352670)
   chief.coleman@klgates.com
4  **K&L GATES LLP**
5  10100 Santa Monica Blvd, 8th Floor
   Los Angeles, CA 90067
6  Telephone: +1 310 552 5000
   Facsimile: +1 310 552 5001
7

8  Attorneys for Defendant
   Motorola Mobility LLC
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12

13  JONATHAN GABRIELLI, an individual, on        Case No. **4:24-cv-09533-JST**
    behalf of himself, the general public, and those
14  similarly situated,                          **MOTOROLA MOBILITY LLC'S REPLY
                                                 TO PLAINTIFF JONATHAN
15              Plaintiff,                       GABRIELLI'S OPPOSITION TO THE
                                                 MOTION TO DISMISS**
16         v.
                                                 [Assigned to the Honorable Jon S. Tigar]
17  MOTOROLA MOBILITY LLC
                                                 Hearing Date: May 22, 2025
18              Defendants.                      Time:          2:00 PM
                                                 Courtroom:     6
19
                                                 Complaint Filed: December 31, 2024
20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ......................................................................................................... 1

II.   LEGAL ARGUMENT ................................................................................................... 2

     a.   **Gabrielli's Complaint Does Not Establish That He Has Standing.** ................. 2

     b.   **The Court Does Not Have Personal Jurisdiction Over Motorola** .................. 4

     c.   **Plaintiff's Opposition Fails to Overcome the Dismissal Arguments Made by Motorola in the Motion with Respect to Plaintiff's Multiple Causes of Action** ...................................................................................... 6

          1.   Plaintiff's Common Law Claims for Invasion of Privacy are Deficient (Claims 1 and 2) ................................................................ 6

          2.   Plaintiff's Claims Under CIPA Fail (Claims 3 and 4) ........................... 8

               i.   *Plaintiff fails to state a claim under Section 631 of CIPA (Claim 3).* ................................................................. 8

               ii.   *Plaintiff fails to state a claim under Section 638.51 of CIPA (Claim 4)* ......................................................... 10

          3.   Plaintiff Has Not Supported a Claim for Breach of Contract (Claim 7) ......................................................................... 11

               i.   *Plaintiff Has Not Established the Formation of A Contract* ....... 11

               ii.   *If a Contract Exists, Motorola's Terms of Use are Enforceable Against Plaintiff* ....................................... 12

               iii.   *The Terms in Motorola's TOU are Not Unconscionable* ........... 13

          4.   Plaintiff 's Breach of Implied Covenant of Good Faith and Fair Dealing Claim Fails (Claim 8) ................................................. 13

          5.   Plaintiff Fails to State a Claim for Fraud and Misrepresentation (Claim 5) ......................................................................... 14

          6.   Plaintiff's Trespass to Chattels Claim Is Barred as a Matter of Law (Claim 9) ....................................................................... 14

          7.   Plaintiff's Unjust Enrichment Claim is Barred as a Matter of Law (Claim 6) ....................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astiana v. Hain Celestial Grp., Inc.,*
783 F.3d 753 (9th Cir. 2015) ................................................................................................. 15

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) ............................................................................................................... 13

*Baltazar v. Apple Inc.,*
2011 WL 6747884 (N.D. Cal. Dec. 22, 2011) ....................................................................... 12

*Briskin v. Shopify, Inc.,*
No. 22-15815, 2025 WL 1154075 (9th Cir. Apr. 21, 2025) ........................................... 4, 5, 6

*Brodsky v. Apple Inc.,*
445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................................... 15

*Byars v. Sterling Jewelers, Inc.,*
No. 5:22 Civ. 1456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........................................... 3

*C. M. v. MarinHealth Med. Grp., Inc.,*
No. 23-CV-04179-WHO, 2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ................................. 11

*Calder v. Jones,*
465 U.S. 783 (1984) ................................................................................................................. 4

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
222 Cal. App. 3d 1371 (1990) ............................................................................................... 13

*Carter v. Rent-A-Ctr., Inc.,*
718 F. App'x 502 (9th Cir. 2017) ........................................................................................... 13

*Doe I v. Google LLC,*
741 F. Supp. 3d 828 (N.D. Cal. 2024) ............................................................................... 6, 15

*Doe v. Amgen, Inc.,*
No. 2:23-CV-07448-MCS-SSC, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ...................... 10

*Eggleston v. Reward Zone USA LLC,*
2022 WL 886094 (C.D. Cal. Jan. 28, 2022) ............................................................................ 7

*In re Facebook, Inc. Internet Tracking Litig.,*
956 F.3d 589 (9th Cir. 2020) ................................................................................................... 2

*Gardiner v. Walmart*,
 No. 20-cv-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) .................................. 12

*In re Google Location Hist. Litig.*,
 514 F. Supp. 3d 1147 (N.D. Cal. 2021) ............................................................................... 8

*Graham v. Ellmore*
 (1933) 135 C.A. 129, 132 ...................................................................................................... 14

*Heeger v. Facebook, Inc.*,
 509 F. Supp. 3d 1182 (N.D. Cal. 2020) ............................................................................... 3

*Herrera v. Zumiez, Inc.*,
 953 F.3d 1063 (9th Cir. 2020) .............................................................................................. 10

*Huynh v. Quora, Inc.*,
 No. 18-CV-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ............................ 11

*Intel Corp. v. Hamidi*,
 30 Cal. 4th 1342 (2003) .......................................................................................................... 15

*In re iPhone Application Litig.*,
 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................... 8, 15

*James v. Walt Disney Co.*,
 701 F. Supp. 3d 942 (N.D. Cal. 2023) .................................................................................. 9

*Ji v. Naver Corp.*,
 No. 21 Civ. 5143, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ...................................... 3

*Jonathan Gabrielli v. Insider, Inc.*,
 No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .............................. 1, 3

*Jones v. Ford Motor Co.*,
 85 F.4th 570 (9th Cir. 2023) .................................................................................................... 2

*Katz-Lacabe v. Oracle America, Inc.*,
 668 F. Supp. 3d 928 (N.D. Cal. 2023) .................................................................................. 8

*Kilgore v. KeyBank, Nat. Ass'n*,
 718 F.3d 1052 (9th Cir. 2013) (en banc) ............................................................................ 13

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
 No. 8:24-CV-00569-FWS-JDE, 2024 WL 4800695 (C.D. Cal. Sept. 3, 2024) ................. 10

*Landon v. TSC Acquisition Corp.*,
 No. 2:23-cv-01377-SVW-PD, 2024 WL 5317240 (C.D. Cal. Nov. 1, 2024) ................. 13, 14

*Lectrodryer v. SeoulBank*,
 77 Cal. App. 4th 723 (Cal. Ct. App. 2000) ......................................................................... 15

*Lee v. Plex, Inc.*,
No. 24-CV-02386-EKL, 2025 WL 948118 (N.D. Cal. Mar. 28, 2025)....................................6

*Lien v. Talkdesk Inc.*,
No. 24-CV-06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) ...............................1, 15

*Lightoller v. Jetblue Airways Corp.*,
No. 23 Civ. 361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ................................3

*McClung v. AddShopper, Inc.*,
No. 23-CV-01996-VC, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ........................7, 9

*Moretti v. Hertz Corp.*,
No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014)...................................13

*N.A.M.E.S. v. Singer*,
90 Cal.App.3d 653 (1979)........................................................................................12

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)....................................................................................5

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015)....................................................................................4

*Rodriguez v. Autotrader.com, Inc.*,
No.2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS 47308 (C.D. Cal. Mar. 14,
2025) ...............................................................................................................................1

*Rodriguez v. Autotrader.com, Inc.*,
No.2:24-cv-08735-RGK-JC, 2025 WL 1085787 (April 4, 2025).......................................1, 3

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 65409 (C.D. Cal. Jan. 8, 2025).............................3

*Rodriquez v. Google LLC*,
No.-cv-04688-RS, 2021 WL 2026726at (N.D. Cal. May 21, 2021)........................................8

*Ronderos v. USF Reddaway, Inc.*,
114 F.4th 1080 (9th Cir. 2024)....................................................................................13

*Ruth Martin v. Outdoor Network LLC*,
No. 2:23-CV-09807-AB-AJR, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024)............................5

*Shakur v. Schriro*,
514 F.3d 878 (9th Cir. 2008)....................................................................................13

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) ....................................................................15

*Silver v. Stripe Inc.*,
    No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ............................... 8

*Smith v. YETI Coolers, LLC*,
    No. 24-CV-01703-RFL, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ................................. 10

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................. 15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................... 2

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................................ 14

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ......................................................................................... 2, 4

*Williams v. What If Holdings, LLC*,
    No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ............................. 9

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
    62 F.4th 517 (9th Cir. 2023) .................................................................................. 2

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) ............................................................... 8, 14

**Statutes**

CA Civ. Code §1784 ................................................................................................ 7

Cal. Pen. Code 638.52(c) & (d)(1) ........................................................................... 10

Cal. Pen. Code §637.2(a) ......................................................................................... 2

California Consumer Privacy Act section 7027(m) ....................................................... 5

Consumer Legal Remedies Act .................................................................................. 7

Electronic Communications Act, 18 U.S.C. §2510 ........................................................ 11

Federal Rule of Civil Prodecure 9(b) ........................................................................ 14

1    ## I.    <u>INTRODUCTION</u>

2        Plaintiff Jonathan Gabrielli ("Plaintiff" or "Gabrielli") is a "tester" and a serial plaintiff.  As

3    established in Motorola Mobility LLC's ("Motorola" or "Defendant") Motion to Dismiss

4    ("Motion), Plaintiff regularly visits websites in order to file a lawsuit when he thinks he has found

5    a violation.  His Opposition confirms that he believes this practice permits him to simply allege that

6    he has found a violation on Motorola's website and then proceed, unconstrained, to litigate his

7    claims.  But that is not the way it works.  Federal judicial procedures and practices have established

8    threshold requirements that Plaintiff must first satisfy to prosecute his claim.  They include, among

9    others, that he plead facts in his Complaint to demonstrate that he has suffered a concrete injury

10   sufficient to confer standing, that the Court has personal jurisdiction over Motorola, and that his

11   claims are legally viable.  He has done none of these here.

12       The recent dismissal of Gabrielli's complaint **with prejudice** for lack of standing by a

13   federal court in the Southern District of New York where he alleged similar California invasion of

14   privacy website claims should have been a harbinger for him with respect to how federal courts are

15   now handling these tester no-injury privacy lawsuits. See, *Jonathan Gabrielli v. Insider, Inc.,* No.

16   24-CV-01566 (ER), 2025 WL 522515, at *8 (S.D.N.Y. Feb. 18, 2025).  Lest Plaintiff believe that

17   his experience with the New York federal court was an aberration, the next day, on February 19, a

18   federal court in this District similarly dismissed another plaintiff's California invasion of

19   privacy/CIPA website complaint for lack of standing.  See, *Lien v. Talkdesk Inc.,* No. 24-CV-

20   06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025).  Then again, on March 14, a federal district

21   court in the Central District of California dismissed *with prejudice* a CIPA website lawsuit stating,

22   among other things, that it had previously ruled in connection with one of that plaintiff's claims

23   that where a tester actively seeks out privacy violations, plaintiff " 'had no expectation of privacy'

24   when she visited Defendant's website, and therefore lacked an injury in fact sufficient to establish

25   standing." *Rodriguez v. Autotrader.com, Inc.*, No.2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS

26   47308, at *5 (C.D. Cal. Mar. 14, 2025).  On April 4, 2025, the same court, *sua sponte*, ruled

27   identically with respect to plaintiff's remaining privacy claim.  *Rodriguez v. Autotrader.com, Inc.*,

28   No.2:24-cv-08735-RGK-JC, 2025 WL 1085787 at *1 (April 4, 2025).

Instead of accepting the reality of these recent court decisions, the Opposition repeats Plaintiff's allegation that he purportedly found an error in a popup banner button on Motorola's website which resulted in the collection of his unspecified data -- which is exactly what he hoped would happen when he tested the website – and he believes this alone entitles him to prosecute these claims.  But whether or not he found a problem with a Motorola website button does not save his claims from the requirement that he plead facts showing that he suffered a concrete injury, that the court has jurisdiction over Motorola, and that his claims are legally sufficient.

## II.    LEGAL ARGUMENT

### a.   Gabrielli's Complaint Does Not Establish That He Has Standing.

A party seeking to invoke federal jurisdiction bears the burden of establishing that he has suffered "an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and that "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).  CIPA provides a private right to bring an action only when a plaintiff alleges s/he has been "injured". *See*, Cal. Pen. Code §637.2(a). General or conclusory allegations of these elements are insufficient. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) (citations omitted).  Thus, there must be a concrete injury-in-fact. Congress may not "enact an injury into existence" merely by granting a right to sue, and therefore there is no automatic satisfaction of the injury-in-fact requirement just because a plaintiff has a statutory right to sue. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Instead, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue ... in federal court." *TransUnion,* 594 U.S. at 427 (emphasis in original).

Plaintiff's opposition argues that a mere allegation of a violation of a website user's privacy rights established by CIPA is sufficient to demonstrate a concrete injury-in-fact.[1] (DE 22; "Opp."

---

[1] To support this proposition, Plaintiff cites, for example, *Jones v. Ford Motor Co.,* 85 F.4th 570 (9th Cir. 2023). However, that case is inapplicable. *Jones* concerns the WPA not CIPA. Further, in *Jones*, the software downloads involved text messages and call logs.  Likewise, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) is also distinguishable.  It involved data being collected even after a user no longer used the website. Here, Plaintiff does not allege a continuing privacy violation; only that a purported violation occurred during his website visit.

2

p. 3:19-4:4.) This is wrong, and federal courts have widely confirmed this when dismissing similar claims. *See, e.g., Lightoller v. Jetblue Airways Corp.*, No. 23 Civ. 361, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023) (dismissing for lack of standing because "a bare CIPA violation by itself is insufficient to demonstrate Article III injury in fact"); *Byars v. Sterling Jewelers, Inc.*, No. 5:22 Civ. 1456, 2023 WL 2996686, at *3–4 (C.D. Cal. Apr. 5, 2023) (same); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1188, 1189–91 (N.D. Cal. 2020) (no injury in fact where Facebook was alleged to have collected "IP addresses showing locations where [plaintiff] accessed his Facebook account"); *Ji v. Naver Corp.*, No. 21 Civ. 5143, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "user and device identifiers" could not give rise to "a privacy injury").

The Opposition also fails to acknowledge the import of another federal court's recent decision, referenced above, granting a motion to dismiss *against this very same Plaintiff* (Gabrielli) on the grounds that he had failed to allege a concrete injury and therefore lacked Article III standing to assert his privacy/CIPA web-based claims. *See Jonathan Gabrielli,* 2025 WL 522515, at *8 (dismissing, with prejudice, claims for public disclosure of private facts, intrusion upon seclusion, unjust enrichment, and violations of CIPA § 638.51.) Although Plaintiff contends his prior enforcement of his privacy rights have no bearing on this matter, Motorola disagrees and so do the courts. (Opp. at p. 5 n.2.) Plaintiff's prior "enforcement of his privacy claims," in this and other forums makes him "an individual that seeks out legal violations and files lawsuits to ensure legal compliance." *Rodriguez v. Autotrader.com, Inc*., No. 2:24-CV-08735-RGK-JC, 2025 WL 65409 at n.2 (C.D. Cal. Jan. 8, 2025). On April 4, 2025, in deciding a motion to dismiss the second amended complaint, the California federal court held that testers, like Plaintiff here, who "visit[] and enter[] information into Defendant's website expecting the information to be accessed, recorded, and disclosed… cannot claim an injury when her expectations were ultimately met" even if the tester "had dual motivations for using Defendant's website." *Rodriguez v. Autotrader.com, Inc.,* No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 *1 n.2 (C.D. Cal. April 4, 2025.). The fact that Plaintiff here claims that he tried to engage a banner button that should have prevented the recording of data that he inputted in the website is irrelevant for purposes of his demonstrating concrete injury and standing because (i) the fact that some data may have been recorded by itself does not qualify as a

1    concrete injury in fact, and (ii) in "testing" the button Plaintiff knew that there was the possibility

2    that it could malfunction and data might be inadvertently recorded – why else "test" it?[2] Plaintiff's

3    argument that in addition to testing he also wished to browse the website does not save his claims

4    because he suffered no concrete injury and therefore lacks standing with respect to **all** of his claims.

5        Finally, to create a nexus between data collected and showing a concrete injury, the

6    Opposition leans heavily on information provided in Motorola's privacy statement describing the

7    data that it *could* obtain from its users, (DE 1, ¶¶ 31, 47, 65,67).  However, Plaintiff's conclusory

8    allegation that he *could* receive ads since his data was collected (Opp. at p. 23:28) is insufficient

9    because there are no allegations that Plaintiff ever saw advertisements for Motorola's products after

10   interacting with the website. In fact, there are no allegations that Plaintiff ever saw any targeted

11   Motorola advertisements. Therefore, Plaintiff suffered no concrete injury and lacks standing.  As

12   stated in *TransUnion*, "[n]o concrete harm, no standing." *TransUnion*, 594 U.S. at 442.

13       **b.  <u>The Court Does Not Have Personal Jurisdiction Over Motorola</u>**

14       Plaintiff does not dispute that the Court has general jurisdiction here. Rather, he argues that

15   the Court has specific jurisdiction over Motorola. Under the "effects test" utilized in the Ninth

16   Circuit to examine purposeful direction of activities at a State, the plaintiff bears the burden to show

17   that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3)

18   causing harm that the defendant knows is likely to be suffered in the forum state." *Calder v. Jones,*

19   465 U.S. 783 (1984); *Picot v. Weston,* 780 F.3d 1206, 1214 (9th Cir. 2015). The Ninth Circuit

20   recently reaffirmed that the *Calder* test remains the proper test for determining purposeful direction.

21   *Briskin v. Shopify, Inc*., No. 22-15815, 2025 WL 1154075 at *7 (9th Cir. Apr. 21, 2025).

22       In the context of a nationally accessible website, "something more" than operating a passive

23   website is required; "to show express aiming at the forum state." *Briskin, supra,* 2025 WL 1154075

24

---

25   [2] Plaintiff's status as a tester, among other things, is not only clear from his multiple prior privacy
26   lawsuits (*see*, Mot. at 1, n. 2), but he indirectly confirms this in his various statements in his
     Opposition and his Complaint.  *See, e.g.*, Opp. at 5, n.2 (Plaintiff "seeks to enforce them [his
27   privacy rights] when he is harmed.  Though inconvenient for privacy violators, there is nothing
     wrong with this conduct."); DE 1, ¶77 ("Plaintiff would like to browse websites that do not
28   misrepresent that users can reject all non-essential cookies…")

at *7. The Court may consider factors such as "the interactivity of the defendant's website,…the geographic scope of the defendant's commercial ambitions,…and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Mavrix Photo*, 647 F.3d at 1229. Operating a passive website without any apparent intention to target a specific forum is not sufficient for purposeful direction. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-57 (9th Cir. 2006). Where a defendant's business "lacks a forum-specific focus," a court declines to find purposeful direction. *Ruth Martin v. Outdoor Network LLC*, No. 2:23-CV-09807-AB-AJR, 2024 WL 661173, at *4 (C.D. Cal. Jan. 31, 2024) (holding the plaintiff's privacy claims failed to involve purchase or shipment of products).

Plaintiff centers his personal jurisdiction argument on Motorola's Privacy Statement, which mentions a California privacy regulation. (Opp., at p. 7:14-16.) However, there is nothing in the Privacy Statement that "prioritizes" California or makes the Privacy Statement "relevant almost exclusively" to California (*see*, cases cited in Opp., at 7:22 – 8:4). To the contrary, the first page of the Privacy Statement states that it applies to **all** Motorola website visitors **everywhere**. "Motorola recognizes that privacy is of great importance to individuals **everywhere** – our customers, website visitors, and product users …**everyone**." (Emphasis added). (*See* DE 13-1.) Then it goes on to describe the "information [that Motorola] collects about you when you interact with our websites", and explains the reasons it collects the information. It thereafter states that "Motorola does not use or disclose sensitive person information", noting that for California residents Motorola adheres to section 7027(m) of the California Consumer Privacy Act Regulations, which are no doubt the strictest in the nation and require that specific steps be taken, **including providing notification** in connection with the use of sensitive personal information. The fact that Motorola described to **all** website visitors its policy of handling sensitive personal information, including assuring California residents that it is complying with that State's strict privacy regulation, cannot logically be construed as targeting "almost exclusively" its website or business at California residents.

The Opposition also contends that Motorola solicits business in California, and that is further proof that the Court has jurisdiction here. (Opp., 8:16.) Soliciting business as an aspect of

specific jurisdiction was addressed in *Briskin v. Shopify Inc., supra*. There, the Ninth Circuit held that the lower court had specific jurisdiction over the defendant because of a combination of factors, key among which included that (i) the plaintiff alleged the defendant knew that plaintiff was located in California, (ii) defendant sold a physical product to plaintiff that was delivered in California, and (iii) defendant sold plaintiff's data profile to California merchants without plaintiff's knowledge or consent. None of those facts are alleged in the instant Complaint. There is no evidence that Motorola's website focuses any specific effort to solicit business from consumers in California. Plaintiff's apparent argument that his ability to access the website confers personal jurisdiction has been soundly rejected by the courts. See, e.g., *Lee v. Plex, Inc*., No. 24-CV-02386-EKL, 2025 WL 948118 (N.D. Cal. Mar. 28, 2025).

**c. Plaintiff's Opposition Fails to Overcome the Dismissal Arguments Made by Motorola in the Motion with Respect to Plaintiff's Multiple Causes of Action**

1. Plaintiff's Common Law Claims for Invasion of Privacy are Deficient (Claims 1 and 2)

As previously discussed in the Motion, to succeed on a tortious invasion of privacy and intrusion upon seclusion claim, Plaintiff must adequately allege intent – intent to invade defendant's privacy. *Doe I v. Google LLC,* 741 F. Supp. 3d 828 (N.D. Cal. 2024).

In the Opposition, Plaintiff does not dispute this legal standard. Instead, he argues that Motorola knew that the software installed on its website could allow third parties to access a user's data. But this completely misses the point in the Motion. The question is not whether Plaintiff knew or should have known that a third party would have access to the data if Motorola installed tracking software on its website. The question, for purposes of demonstrating tortious intent here, is whether Plaintiff has sufficiently alleged that Motorola **intended to misappropriate his data by having a knowingly malfunctioning "Reject All non-essential cookies" button** ("Reject button") on its website programmed to surreptitiously share Plaintiff's data with a third party.[3]

To try and further confuse the relevant issue, the Opposition then constructs a "strawman" asserting that Motorola argues that it made a bona fide error or mistake with respect to the Reject

---

[3] Plaintiff alleges the Reject button, even though engaged, "continued to cause cookies and tracking technologies to be stored on consumers' devices". (DE 1, ¶ 76).

1  button, and Motorola has no "factual support" for that argument.  (Opp., at 10:2-3).  No such

2  argument is made by Motorola.  The only argument made in the Motion in this regard is that

3  "common sense would tell one that it is likely any alleged improper button functioning was entirely

4  *unintentional* and the result of a bona fide error."  (Mot., at 12:23-25.) Despite Plaintiff's apparent

5  invitation, Motorola understands that it cannot introduce new facts not alleged in the Complaint on

6  a motion to dismiss.  Consequently, it posited a commonsense explanation for what may have

7  happened in light of Plaintiff's assertion that the Reject button did not function properly.[4]

8  Specifically, a purpose behind the Reject button according to Plaintiff's Complaint was to inform

9  website visitors of Motorola's privacy policy and to allow them to customize their experience on

10  the website. (*See, e.g.,* DE 1, ¶¶ 33, 76.)  Again, common sense would infer, if not confirm, that the

11  button's existence was intended to ensure Plaintiff could customize his browsing experience. To

12  accept Plaintiff's argument, one would have to accept that Motorola put a fake button in place with

13  no intention that it would work.  In this era of robust data privacy laws and litigation, the logical

14  conclusion absent the pleading of nefarious conduct by a large and sophisticated company, would

15  be that any alleged Reject button malfunction was the result of a bona fide error or mistake.[5]

16  Nor can the other arguments made in the Opposition save Plaintiff's invasion of privacy

17  claims because the facts pleaded in the Complaint are simply insufficient.  As discussed in the

18  Motion, Plaintiff is unable to sufficiently allege the required element that the subject invasion must

19  constitute highly offensive conduct that amounts to "an exceptional kind of prying into another's

20  private affairs." *McClung v. AddShopper, Inc.,* No. 23-CV-01996-VC, 2024 WL 189006, at *4

21  (N.D. Cal. Jan. 17, 2024). To overcome this deficiency, the Opposition relies on *Katz-Lacabe v.*

22  *Oracle America, Inc.,* 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) ("Katz") to argue that amassing

23

---

24  [4] It is not unusual for courts to rely on common sense in deciding a matter.  See e.g., *Eggleston v. Reward Zone USA LLC*, 2022 WL 886094, *5 (C.D. Cal. Jan. 28, 2022) (court rejected plaintiff's
25  argument calling it "beyond the bounds of common sense.").
26  [5] Lack of intent, mistake and bona fide error are defenses to privacy violations.  See, e.g., *Hernandez v. Hillsides*, Inc. 47 Cal 4th 272, 295 (2009) ("[N]o cause of action will lie for accidental, misguided
27  or excusable acts of overstepping upon legitimate privacy rights."  It is also a defense to a Consumer Legal Remedies Act ("CLRA") claim which is a claim usually pleaded by plaintiffs in CIPA cases.
28  CA Civ. Code §1784 ("no damages may be given" if defendant proves the act "was not intentional and resulted from a bona fide error….").

large amounts of online data is highly offensive. *Id*. However, *Katz* is inapposite.  In *Katz,* the court found the highly offensive data to be "sensitive health and personal safety information." *Id*.[6]

Moreover, Plaintiff has failed to identify in the Complaint the alleged highly offensive personal or private information he believes was shared due to the third-party software, and therefore the court is unable to determine whether the data collected was highly offensive. (*See generally*, DE 1.) Plaintiff states the types of information third-party cookies *could* track or record but fails to specify what (if any) of his information was *actually* tracked or recorded.  (*Id*., ¶ 18.)  Plaintiffs must allege facts that plausibly show what data was actually tracked and recorded. *In re Zoom Video Commc'ns Inc. Priv. Litig*., 525 F. Supp. 3d 1017, 1036 (N.D. Cal. 2021) (collecting cases). Plaintiff must also allege "what information, precisely, [certain] third parties have obtained." *Id*. at 1038.  Alleged improper functioning of a specific portion of the website's code does not demonstrate an *egregious* breach of social norms but rather usually an inadvertent oversight. *In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

2. Plaintiff's Claims Under CIPA Fail (Claims 3 and 4)

i.  *Plaintiff fails to state a claim under Section 631 of CIPA (Claim 3).*

The parties agree that Section 631 requires: "[1] **intentional** wiretapping, [2] **willfully** attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the

---

[6] In addition, Plaintiff cites, for example, *Silver v. Stripe Inc*., No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021).  *Silver* is inapplicable because the court found that the privacy claim was well-pleaded since plaintiff alleged that defendant "compiled [the data] into report, assigned a Risk Score, and then made available to all of [defendant's] merchants for their personal use." As addressed herein, Plaintiff only contends that a third-party software *could* record the data, not that they did so. *In re Google Location Hist. Litig.,* 514 F. Supp. 3d 1147 (N.D. Cal. 2021) is also distinguishable, as it regarded location data being collected even after a user no longer used the website. Here, Plaintiff does not allege a continuing privacy violation only that a purported violation occurred when the Reject button allegedly failed during his visit. And *Rodriquez v. Google LLC,* No.-cv-04688-RS, 2021 WL 2026726at *8 (N.D. Cal. May 21, 2021), which is also distinguishable, involved circumstances where there was no question that defendant intended to collect and record plaintiffs' data; the relevant issue there was whether plaintiffs had plausibly alleged that they did not consent even though collection disclosures were made on defendant's website. Here, the allegation is that the reject button was not properly functioning which resulted in data being collected – not that Motorola intended to collect data by purposely installing a malfunctioning Reject button.

1    previous two activities." *Williams v. What If Holdings, LLC,* No. C 22-03780 WHA, 2022 WL

2    17869275 at *2 (N.D. Cal. Dec. 22, 2022).  Similarly, the parties agree that Motorola cannot be

3    liable under the above three prongs of Section 631 because it was a party to the communications,

4    and it cannot eavesdrop on its own communications.  *Williams*, 2022 WL 17869275 at *2.

5          Thus, Plaintiff must rely on the fourth prong of Section 631 and allege that Motorola

6    **intended** to aid and abet a third party's tapping Plaintiff's communication.  Referring again to

7    common sense principals, the website had a Reject button designed to *prevent* the purported

8    wiretapping, which Plaintiff alleges was not functioning properly (it "continued to cause cookies

9    and tracking technologies to be stored on consumers' devices").  (DE 1, ¶ 76).  To overcome this

10   hurdle, Plaintiff cites *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953 (N.D. Cal. 2023) to argue

11   that courts have rejected the requirement that Motorola must intend to violate Section 631.  This is

12   not true.  First, in *James*, there was **no dispute** that intent was a required element of a Section 631

13   violation ("[p]laintiffs do not fundamentally dispute that there must have been intent on the part of

14   Disney to have Oracle intercept").  *Id* at 954.  Second, *James* is inapposite because it does not

15   involve a claim that a Reject button (or similar mechanism on Disney's website) designed to

16   prevent the collection of non-essential data from a consumer was not functioning properly.  Instead,

17   *James* involved the standard claim that Disney contracted with a third party to install cookies and

18   other recording technologies to capture consumers' data without consent.  Third, in *James*, the issue

19   was whether it could be inferred from the complaint that Disney intended to have Oracle's software,

20   which Disney contracted to use, record consumer data when they visited the website.  The court

21   was willing to make this inference.  Here, the exact opposite is at issue.  The issue here is whether

22   it is reasonable to infer that Motorola intended to permit the recording of Plaintiff's data when it

23   had a Reject button which may not have been functioning properly. The common sense answer has

24   to be no. Fourth, Plaintiff here does not allege he received any targeted ads from a third party or

25   that Motorola or a third party actually otherwise benefited from the Reject button's alleged

26   malfunction, which was the case in *McClung,* 2024 WL 189006 at *2.  Instead, Plaintiff pleads

27   only *potential* ways Motorola *could* benefit, not that Motorola actually attempted to use the

28   information or that the alleged improper functionality benefitted the third-party. (DE 1, ¶¶ 19, 65.)

1    Similarly, the rulings in other cases cited by Plaintiff like *Doe v. Amgen, Inc.,* No. 2:23-CV-07448-

2    MCS-SSC, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) and *Kotlarsz v. Integrity Vehicle Servs.,*

3    *Inc*., No. 8:24-CV-00569-FWS-JDE, 2024 WL 4800695 (C.D. Cal. Sept. 3, 2024) are not relevant.

4           Additionally, the Opposition is unable to distinguish the holding in *Smith v. YETI Coolers,*

5    *LLC*, No. 24-CV-01703-RFL, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024), upon which

6    Motorola relies in support of its arguments that Plaintiff must plead that Motorola **intended** to

7    invade his privacy when the Reject button allegedly malfunctioned.  The parties agree that *Yeti*

8    specifically holds that the fourth prong of Section 631(a) "indicates that the defendant must be

9    acting with the third party in order to have the third party perform acts that violate the statute."

10   However, Plaintiff fails to cite the very next sentence in *Yeti* which states: "At the very least, that

11   requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing

12   with, or employing the third party to commit those acts." *Id*. at *4. *Yeti* also states by "its plain

13   terms, that statutory language does not cover, for example, a defendant who properly and lawfully

14   provides information or access to a third party without any knowledge or intent that the third party

15   will use the information in a manner that violates the statute." *Id*. There is no allegation in the

16   Plaintiff's complaint here that having an allegedly improperly functioning Reject button was

17   intended by Motorola to allow a third party to use the information in a manner that violated the

18   statute.  Consequently, the claim should be dismissed.

19       *ii.    Plaintiff fails to state a claim under Section 638.51 of CIPA (Claim 4)*

20          Pen registers are attached to **telephones** (cordless or cell phones), and requires, *inter alia*,

21   the identity of and to whom the **"telephone line"** belongs and the "physical locations **of the**

22   **telephone line.**" (*Id*.) (emphasis added); *see also* Cal. Pen. Code 638.52(c) & (d)(1). Based on its

23   plain language, therefore, the statute is applicable only to **telephones**. *See, e.g., Herrera v. Zumiez,*

24   *Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020). And, importantly, the bill introducing Sections 638.50

25   through 638.55 was enacted in 2015—well after the advent of the internet and with full knowledge

26   that devices other than telephones (such as computers and tablets) could be used to communicate

27   electronically. (DE 13-5.) If the legislature intended § 638.51 to apply to *non-telephonic* devices,

28   it could and would have refrained from specifying that it applied to **telephones**. Therefore,

1  Plaintiff's argument in the Opposition that Motorola's position is "contrary to its [the statute's]

2  plain language" (Opp. at 16:14) is without merit.[7]

3       The Opposition also argues that Motorola's contention that even if the software on the

4  website was a pen register there is an exception in Section 638.51(b) that allows the use of a pen

5  register to operate, maintain, and test a wire or electronic communications service, is without merit.

6  The basis for Plaintiff's argument is that the Complaint alleges no facts from which it can be

7  discerned that Motorola provides an electronic communications service on its website.  (Opp. at

8  17:22-23). That is not true. The term electronic service provider is defined in various statutes

9  including, for example, the Electronic Communications Act, 18 U.S.C. §2510, which defines an

10 "electronic communications services" to mean "any service which provides users thereof the ability

11 to send or receive wire or electronic communication."  The entire premise of Plaintiff's complaint

12 is that he used his device to send electronic communications to Motorola's website when he

13 accessed the website and clicked the Reject button. (See, e.g., DE 1, ¶¶72-73.)

14     3.  Plaintiff Has Not Supported a Claim for Breach of Contract (Claim 7)

15     i.  *Plaintiff Has Not Established the Formation of A Contract*

16       Plaintiff has not pleaded any bargained for exchange that resulted in "consideration" for an

17 express or implied contract claim. *C. M. v. MarinHealth Med. Grp., Inc.,* No. 23-CV-04179-WHO,

18 2024 WL 217841 *3 (N.D. Cal. Jan. 19, 2024) (holding plaintiffs must allege specific

19 "consideration" for implied contract claim regarding data privacy.); *Huynh v. Quora, Inc.,* No. 18-

20 CV-07597-BLF, 2019 WL 11502875 *10 (N.D. Cal. Dec. 19, 2019) (holding "Plaintiffs have not

21 shown that they paid anything for the asserted privacy protections.") Moreover, Plaintiff does not

22 address the fact that he did not plead that he agreed to or did accept **all** the terms of the Privacy

23 Agreement which covers, among other things, the use of the Reject button. Therefore, no contract

24 was formed. *Gardiner v. Walmart*, No. 20-cv-04618-JSW, 2021 WL 2520103, at *6, *17-18 (N.D.

25

26 ─────────────────

27 [7] The fact that Plaintiff is able to cite cases that support his view that pen registers are not limited
to telephone devices is of little consequence.  Motorola cited a string of cases in its Motion that
limit pen register claims to telephone devices.  The legislation and its related history, cited by
28 Motorola, governs and confirms that pen registers are limited to telephone devices.

1    Cal. Mar. 5, 2021) (rejecting implied contract claim where plaintiff did not allege that the defendant

2    required [plaintiff] to agree to or accept the terms of the Privacy Policy.)

3          The Opposition argues that online contracts can be formed if they meet the requirements

4    for formation of a contract. (Opp. at 18:10-11). Motorola does not dispute that argument.  Instead,

5    Plaintiff leaps over all the other requirements for the pleading a breach of contract (e.g., resulting

6    damages; he has failed to plead any cognizable damages here), and carves out the description of

7    the function of the Reject button as being the "contract" – the only "contract" – to which they are

8    mutually bound as a result of Plaintiff's use of Motorola's website. He conveniently ignores the

9    other terms of the "contract" which undercut his claims here and governed his use of the website.

10    *ii.    If a Contract Exists, Motorola's Terms of Use are Enforceable Against Plaintiff*

11          To the extent the Court determines there is a contract that resulted from Plaintiff's use of

12    the Reject button, then as set forth in the Motion, the Terms of Use ("TOU") (including the Privacy

13    Statement) are also a part of the entire contract. If Plaintiff wants to allege that a contract exists, he

14    cannot pick and choose a portion of the contract and ignore the rest.  *See, e.g., Language Line*

15    *Servs., Inc.*, 2011 WL 13153247, at *7; *see also, Baltazar v. Apple Inc.,* 2011 WL 6747884, at *2

16    (N.D. Cal. Dec. 22, 2011).  In his Opposition, Plaintiff contends Motorola failed to provide Plaintiff

17    with adequate notice of the remainder of the contract.  That is a curious argument for Plaintiff to

18    make because the TOU link appears on the **face page** of Motorola's website and the TOU link is

19    contained in the same section as the Privacy Statement link.  As discussed in the Motion, the Privacy

20    Statement is just one portion of the TOU, which expressly incorporates the Privacy Statement as

21    the policy governing Plaintiff's use of the website. Simply because Plaintiff allegedly chose to

22    selectively review policies that governed his use of the website, it cannot save him from being

23    bound by their terms.  *N.A.M.E.S. v. Singer*, 90 Cal.App.3d 653, 656 (1979) ("a party is bound by

24    provisions in an agreement which he signs, even though he has not read them and signs unaware of

25    their existence."). Moreover, "[a] binding contract is created if a plaintiff is provided with an

26    opportunity to review the terms of service in the form of a hyperlink," and it is "sufficient to require

27    a user to affirmatively accept the terms, even if the terms are not presented on the same page as the

28    acceptance button as long as the user has access to the terms of service." *See Moretti v. Hertz Corp.*,

No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014). Here, the TOU specifically directs a website visitor to "***read these Terms of Use ("Terms") carefully before using this web site. If you do not agree to these Terms, then please do not use this site.***" and specifies that website use is provided to visitors "subject to these Terms." (DE 13-4) (emphasis in original).

   *iii.*     The Terms in Motorola's TOU are Not Unconscionable

Plaintiff also incorrectly argues that Motorola's class action waiver set forth in the TOU is by law unenforceable. In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, (2011), the U.S. Supreme Court held that a class action waiver, by itself, is not unconscionable under state law. *Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017); *see also, Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (plaintiffs' argument that a class action waiver in a promissory note is unconscionable under California law "is now expressly foreclosed by *Concepcion*"). Further, Plaintiff cites *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1096 (9th Cir. 2024), to support its position, however, as an employment case, it has a different standard and considerations.

    4.   <u>Plaintiff 's Breach of Implied Covenant of Good Faith and Fair Dealing Claim Fails</u>
            <u>(Claim 8)</u>

With respect to the covenant of good faith and fair dealing, Plaintiff does not address the argument in the Motion explaining that such a cause of action is superfluous and should be dismissed. *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (litigants waive arguments by failing to raise them in an opposition to a motion to dismiss). Nevertheless, Plaintiff's claim here mimics his breach of contract claim. *Id.;(compare* DE 1, ¶¶162-164; *with* ¶¶170-172). *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1395 (1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."). Plaintiff citation in the Opposition to *Landon v. TSC Acquisition Corp*., No. 2:23-cv-01377-SVW-PD, 2024 WL 5317240 (C.D. Cal. Nov. 1, 2024), for the purported holding that an allegation of a defendant's conduct evading the spirit of the bargain made is sufficient to sustain a separate claim of breach of

13

1    the implied covenant of good faith and fair dealing, does not withstand scrutiny. *Landon*

2    specifically stated that the plaintiff had **not** stated enough "facts evincing any 'conscious and

3    deliberate act' required for breach of the implied covenant of good faith and fair dealing" and

4    granted dismissal of the cause of action, much like the Court should do here. *Id.* at *10.

5         5.  Plaintiff Fails to State a Claim for Fraud and Misrepresentation (Claim 5)

6         Plaintiff has not pleaded facts sufficient to establish, among other things, the necessary

7    "intent" element of a fraud claim. There is no allegation that Motorola intentionally installed a

8    Reject button knowing that it would not function properly in order to misappropriate and

9    surreptitiously share his non-essential data with a third-party. Indeed, Plaintiff, no doubt knows,

10   he could never prove such thing. Moreover, Rule 9(b) requires that claims sounding in fraud allege

11   "an account of the time, place, and specific content of the false representations as well as the

12   identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th

13   Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when,

14   where, and how' of the misconduct charged." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F.

15   Supp. 3d at 1046. Plaintiff is unable to credibly argue that the Complaint states with specificity, for

16   example, how any statements Motorola made about the Reject button were, or could be inferred to

17   be, **intentionally misrepresentative.** It is simply not enough to allege that the Reject button did

18   not work as promised. It is hornbook law in California, that an innocent misrepresentation does

19   not constitute fraud. 5 Witkin Sum. Cal. Law Torts § 949 (2024) ("If the defendant's belief is both

20   honest and reasonable … the misrepresentation is innocent and there is ordinarily no tort liability.

21   (*See Graham v. Ellmore* (1933) 135 C.A. 129, 132).")

22        6.  Plaintiff's Trespass to Chattels Claim Is Barred as a Matter of Law (Claim 9)

23        In the Opposition, Plaintiff repeats his allegation that his computing device had a "reduction

24   of storage, disk space, and performance" (DE 1, ¶ 184(b).), and this satisfies his obligation to plead

25   the requisite element of damages. As discussed in the Motion, the California Supreme Court has

26   held that a claim for trespass to chattels "does not encompass, and should not be extended to

27   encompass, an electronic communication that neither damages the recipient computer system nor

28   impairs its functioning." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1347 (2003). Under California

14

law, a trespass to chattels claim exists "where an intentional interference with the *possession* of personal property causes injury." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024). And, the sort of harm required for a trespass claim is a "*significant* reduction in service constituting an interference with the intended functioning of the system." *In re iPhone Application Litig.,* 844 F. Supp. 2d at 1069 (emphasis added). Even a delay of five minutes would not rise to the level of a trespass. *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 124 (N.D. Cal. 2020). Moreover, trespass to chattels occurs only where the interference has proximately caused injury. (*Id*. at 125.) However, absent factual support about how the placement of cookies on a plaintiff's devices reduces storage, disk space, and performance, the courts have held "it is not obvious how the presence on one's computer of the cookies from the providers' websites would result in any cognizable reduction in storage, disk space, or performance" as "nothing about the source code or the existence of cookies physically impairs the functioning of the plaintiffs' computing devices." *Doe 1*, 741 F. Supp. 3d at 846. Moreover, where a plaintiff's "allegations of injury are entirely conclusory, they have failed to state a claim for trespass to chattels." *Id.*

    7.  <u>Plaintiff's Unjust Enrichment Claim is Barred as a Matter of Law (Claim 6)</u>

To state a claim for unjust enrichment, Plaintiff must allege "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000). In California, "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.' " *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). To obtain any equitable relief in federal court, a plaintiff must allege that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Yet Plaintiff's allegations of harm focus on economic injuries already suffered (*See* DE 1, ¶¶ 154-59) and to the extent he contends "his remedies at law are inadequate" (Opp. at p. 25) he only provides conclusory allegations that he lacks an adequate remedy at law (*See, e.g.*, DE 1, ¶ 160). The legal remedy of damages, which Plaintiff seeks here, serves as an adequate form of retrospective relief. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021).[8]

---

[8] Thus, the motion to dismiss should be granted without leave to amend. *Lien*, 2025 WL 551664.

K&L GATES LLP

Dated: April 24, 2025


By: /s/ Chief Coleman
Paul W. Sweeney, Jr.
Zachary T. Timm
Chief Coleman

Attorneys for Defendant
Motorola Mobility LLC

MOTOROLA'S REPLY TO OPPOSITION OF MOTION TO DISMISS—4:24-CV-09533-JST