# EXHIBIT A

# Conohan v. Rad Power Bikes Inc.

United States District Court for the Central District of California

April 3, 2025, Decided; April 3, 2025, Filed

Case No. CV 25-0106 PVC

**Reporter**
2025 U.S. Dist. LEXIS 72865 *; 2025 WL 1111246

ROBERT CONOHAN, individually and on behalf of others similarly situated, Plaintiff, v. RAD POWER BIKES INC., Defendant.

**Counsel:** [*1] For Robert Conohan, individually and on behalf of all others similarly situated, Plaintiff: Robert Tauler, LEAD ATTORNEY, Narain Kumar, Tauler Smith LLP, Los Angeles, CA.

For RAD POWER BIKES INC., a Washington corporation, Defendant: Lynn R. Fiorentino, LEAD ATTORNEY, Arentfox Schiff LLP, Los Angeles, CA.

**Judges:** PEDRO V. CASTILLO, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** PEDRO V. CASTILLO

# Opinion

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S *MOTION TO DISMISS* (Dkt. No. 9)**

I.

**INTRODUCTION**

On January 30, 2025, Rad Power Bikes Inc., ("Rad") filed a **Motion to Dismiss** ("Motion," Dkt. No. 9) and a Memorandum of Points and Authorities ("Mem.," Dkt. No. 9-1), supported by the Declaration of Lynn R. Fiorentino ("Fiorentino Decl.," Dkt. No. 9-2) and accompanying exhibits. On March 19, Robert Conohan filed his Opposition ("Opp'n," Dkt. No. 14), supported by the Declaration of Robert Conohan ("Conohan Decl.," Dkt. No. 15), and the Declaration of J. Evan Shapiro ("Shapiro Decl.," Dkt. No. 14-1) with accompanying exhibits. On March 25, Rad filed a Reply in support of its Motion. (Dkt. No. 16).

The parties have consented pursuant to *28 U.S.C. § 636(c)* to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 5, 12). The **[*2]** Court finds the Motion capable of decision without oral argument, Local Rule 7-15, and STRIKES the April 8 hearing. For the reasons stated below, the **Motion to Dismiss** is DENIED.[1]

II.

---

[1] Rad asserts that it met with Conohan to discuss the substance of its Motion on June 24, 2024. (Motion at 2). But a conference that took place more than six months *prior* to the Complaint being filed does not satisfy the requirements of Local Rule 7-3. The **Motion to Dismiss** could be denied on this ground alone; nevertheless, the Court will discuss the substance of the Motion.

**ALLEGATIONS OF THE COMPLAINT**

Rad is a retailer that sells power bikes and accessories though its www.radpowerbikes.com website (the "Website"). (Compl. ¶ 5). Conohan alleges that Rad contracted with TikTok to embed advertising related software into the Website. (*Id.* ¶ 9). As deployed on the Website, the TikTok Software serves as a de-anonymization process that identifies visitors for marketing and surveillance purposes for the benefit of both Rad and TikTok. (*Id.* ¶¶ 10-15). Conohan asserts that the TikTok Software "gathers device and browser information, geographic information, referral tracking, and URL tracking by running code or 'scripts' to send [Website] user details to TikTok. (*Id.* ¶ 11). The collection of data occurs as soon as a visitor accesses the Website before the user has an opportunity to grant or deny the gathering of the user's information. (*Id.* ¶¶ 12, 19, 21, 31). Conohan alleges that TikTok can compare the visitor data sent from the Website with its massive database for the purpose of "fingerprinting" [*3] or identifying the visitor. (*Id.* ¶ 10). Plaintiff is a California resident who visited the Website after the TikTok software was installed. (*Id.* ¶ 9, 25).

Plaintiff contends that the Website's collection of visitor information violates *California's Trap and Trace Law, Cal. Penal Code § 638.51* ("**CIPA**"). (Compl. ¶¶ 28-32). He seeks to certify a class consisting of all persons within California whose identifying information was sent to TikTok after visiting the Website within the limitations period. (*Id.* ¶ 22). Plaintiff seeks declaratory relief, statutory damages, and attorney's fees and costs. (*Id.* at 8).

**III.**

**DISCUSSION**

Rad moves to dismiss the Complaint, arguing that the Court lacks personal jurisdiction pursuant to *Fed. R. Civ. P. 12(b)(2)* and that pursuant to *Fed. R. Civ. P. 12(b)(6)*, Conohan lacks standing and **CIPA** applies only to the interception of telephone calls.

**A. Personal Jurisdiction**

**1. Standard of Review**

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006)*. "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003)*. Constitutional due process dictates that jurisdiction [*4] may be exercised over a nonresident party only if the party has "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)*.

In the Ninth Circuit, courts use a three-part test for specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Herbal Brands, Inc. v. Photoplaza, Inc., 72 F.4th 1085, 1090 (9th Cir. 2023)* (citation omitted).

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach, 453 F.3d at 1154*; see *Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)* ("The plaintiff bears the burden of satisfying the first two prongs of the test."). "However, this demonstration requires that the plaintiff make only a prima facie [*5] showing of jurisdictional facts to withstand the **motion to dismiss**." *Pebble Beach, 453 F.3d at 1154* (citation omitted); see *Herbal Brands, 72 F.4th at 1090* ("When a defendant's **motion to dismiss** on jurisdictional grounds rests only on written materials rather than on testimony at an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts.") (citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case that the exercise of jurisdiction would not be reasonable.'" *Schwarzenegger, 374 F.3d at 802* (citing *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)*). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger, 374 F.3d at 800* (citations omitted). Thus, when ruling on *Rule 12(b)(2)* motions, "it is appropriate to look beyond the pleadings to affidavits and other evidence." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Aerohawk Aviation, Inc., 259 F. Supp. 2d 1096, 1101 (D. Idaho 2003)* (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)*); see *Pebble Beach, 453 F.3d at 1154*.

### 2. Analysis

Conohan alleges that Rad purposefully directed its activities to California by regularly engaging with California residents through its website and its retail stores and by sharing user data with TikTok in California. (Compl. ¶¶ 2, 9-15; Shapiro Decl. ¶¶ 14-16, 18-19). The Court finds these allegations sufficient to support the [*6] exercise of specific personal jurisdiction over Rad.

*a. Rad Purposefully Directed Its Activities to California.*

For claims that require an intentional tort, or tort-like act, such as here, the federal courts employ a "purposeful direction" test when evaluating the first prong of the specific-jurisdiction inquiry. *Herbal Brands, 72 F.4th at 1090-91*; *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101, 1107 (9th Cir. 2020)*; *Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 979 (9th Cir. 2021)*; see *Keskinen v. Lush Handmade Cosms. LLC, __ F. Supp. 3d __, No. 2:24-CV-08860-HDV-SK, 2025 WL 851074, at *3 (C.D. Cal. Mar. 11, 2025)* (utilizing the purposeful direction framework where the plaintiff's claim against the defendant for their alleged violations of California privacy laws "sound classically in tort and are most naturally analyzed under the purposeful direction framework") (quoting *Briskin v. Shopify, Inc., 87 F.4th 404, 412 (9th Cir. 2023)*). To determine whether a defendant "purposefully directed" its activities at the forum, the Ninth Circuit applies a three-part test derived from *Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)*. See *Herbal Brands, 72 F.4th at 1091*. The *Calder* test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum, *Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011)* (citation omitted), and asks whether the defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state," *Ayla, 11 F.4th at 980* (citation omitted).

Rad's conduct satisfies the first *Calder* element. Conohan alleges that Rad intentionally, [*7] and as a matter of policy, gathers device and browser information, geographic information, referral tracking, and URL tracking from California visitors to Rad's Website, including Conohan's visit on March 4, 2025, and sends the details to TikTok, a California company. (Compl. ¶¶ 9-12; Conohan Decl. ¶ 2; Shapiro Decl. ¶¶ 14-16 & Exs. G, H). Moreover, Rad maintains an interactive Website where California customers can purchase its products. (Compl. ¶¶ 2, 8). In similar situations, courts have found that using technology qualifies as an intentional act for purposes of specific jurisdiction. *See*, e.g., *Keskinen, 2025 WL 851074, at *3*; *Swarts v. Home Depot, Inc., 689 F. Supp. 3d 732, 741 (N.D. Cal. 2023)*.

The second *Calder* element is also met. The Supreme Court cautions that the "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden v. Fiore, 571 U.S. 277, 291, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)*. Instead, two factors are considered. "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State. ... Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated." *Id. at 284-85* (citations omitted). "Second, our 'minimum [*8] contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id. at 285*. Here, Rad has clearly created substantial contacts with California. Of its nine retail outlets, four are in California. (Shapiro Decl. ¶¶ 18-19 & Ex. I). It has contracted with TikTok, a California company, to send user data to California whenever the user lands on Rad's Website and clicks on a page. (Compl. ¶¶ 10-15; Shapiro Decl. Exs. A—F). These contacts are more than sufficient to meet the second factor.

Finally, the third element is easily satisfied. "The third prong of the 'purposeful direction' test asks whether the intentional acts caused harm that the defendant knows is likely to be suffered in the forum state." *In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 744 (9th Cir. 2013)*, aff'd sub nom. *Oneok, Inc. v. Learjet, Inc., 575 U.S. 373, 135 S. Ct. 1591, 191 L. Ed. 2d 511 (2015)*. Conohan alleges that Rad intentionally collected personal data from California visitors its Website without first obtaining their consent. (Compl. ¶¶ 9-12, 31). Given California's robust privacy protections, Rad knew—or should have known—that its alleged actions would cause harm to California residents. *See Keskinen, 2025 WL 851074, at *4* ("Indeed, their significant commercial activity in California, combined with their direct engagement [*9] with California residents through their website and customer service line, amply supports a finding that Defendants knew the privacy harm (again, if proven) would be 'suffered in the forum state.'").

Rad argues that its Website, and its alleged collection of anonymous metadata, "is not purposefully targeted at California residents in any way," citing *Mavrix Photo* for the proposition that specific jurisdiction requires a defendant to "individually target" a plaintiff in the specific forum. (Reply at 5). But "individually targeting" a plaintiff is but one of several factors to consider when evaluating whether a defendant "expressly aimed" its alleged conduct at the forum state, which also includes interactivity of the defendant's website and the geographic scope of the defendant's commercial ambitions. *Mavrix Photo, 647 F.3d at 1229*; *see also Ayla, 11 F.4th at 980* (emphasizing that "expressly aimed" can be satisfied by the defendant's connections to the *forum*). Indeed, in *Mavrix*, the court found that the defendant's website's focus on the California market satisfied the "expressly aimed" jurisdiction prong. *Id. at 1230*. Similarly, as discussed above, Rad's substantial presence in the California market indicates that it expressly aimed its alleged tortious conduct [*10] at the forum. *Cf. Herbal Brands, 72 F.4th at 1093* ("We now hold that if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum.").

*b. Conohan's Harm Arises Out of Rad's Contacts with California*.

To establish specific personal jurisdiction, Conohan's claims "must arise out of or relate to [Rad's] contacts with [California]." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 359, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021)* (citation omitted). Nevertheless, a plaintiff does not need to establish a strict causal relationship between the defendant's forum contacts and the plaintiff's claims. *See id. at 362* ("The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."). Rad contends that "operating a nationwide website available to users in California" "does not aim any of its alleged conduct at issue at California—such that it is legally impossible that Plaintiff's claims can be deemed to arise out of or relate to the defendant's forum-related activities." (Mem. at 19) (citation omitted).

Conohan's claim both arises out of and relates to Rad's contacts with [*11] California. First, Conohan's privacy rights would not have been implicated had Rad not contracted with TikTok—and not forwarded Conohan's private information to TikTok—in California. Second, Conohan would not have sustained his alleged injury had not Rad

made its products available to California residents, such as Plaintiff, through its Website. See Ayla, 11 F.4th at 983 (finding that the defendant's promotion, sale, and distribution of products in the forum relate to the plaintiff's claims); Keskinen, 2025 WL 851074, at *4 (finding that the plaintiff's privacy claims arose out the plaintiff's visit to the defendant's website accessible to California consumers); see generally Mavrix Photo, 647 F.3d at 1228 ("Mavrix's claim of copyright infringement arises out of Brand's publication of the photos on a website accessible to users in the forum state.").

*c. The Exercise of Jurisdiction Over Rad Is Reasonable*.

Once Conohan satisfies the first two prongs, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (citation omitted). The Ninth Circuit employs a balancing test to evaluate reasonableness, weighing seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's **[*12]** affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp., 905 F.3d 597, 607 (9th Cir. 2018).

Rad does not address any of these factors; indeed, Rad does not contend that the exercise of personal jurisdiction would be unreasonable. Nevertheless, the Court finds that Rad has purposefully interjected itself into California's affairs by marketing and operating four of its nine stores in California and faces no burden from litigating in California. Further, the Court finds no conflict with the interests of Washington state, that California has an important interest in protecting the privacy interests of its residents, and that no alternate forum would be more efficient.

In sum, the Court finds that Rad has sufficient minimum contacts with California, Conohan's harm arises out of those contacts, and the exercise of personal jurisdiction is reasonable in these circumstances.

**B. Rule 12(b)(6)**

**1. [*13] Standard of Review**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a complaint for failure to state a claim if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[,]" Twombly, 550 U.S. at 555, "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (*per curiam*) (citations omitted). Similarly, "[s]pecific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." Williams v. Boeing Co., 517 F.3d 1120, 1131 (9th Cir. 2008) (citation omitted).

When determining whether to dismiss a complaint for failure to state a claim, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Colony Cove Props., LLC v. City of Carson, 640 F.3d 948, 955 (9th Cir. 2011) (citations and footnote omitted). The court **[*14]** must accept the complaint's allegations as true, Twombly, 550 U.S. at 555-56, construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Berg v.

Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). However, the court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2006). Likewise, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

2. Analysis

a. Article III Standing

Conohan has adequately alleged an injury sufficient for Article III standing. Under **CIPA**, it is illegal use devices or processes to record or capture dialing, routing, addressing, or signaling information from a wire or electronic communication. Cal. Penal Code §§ 638.50(b)-(c), 638.51. Federal district courts have consistently found that "violations of plaintiffs' statutory rights under **CIPA**, even without more, constitute injury in fact because instead of a bare technical violation of a statute, a **CIPA** violation involves a violation of privacy rights." Licea v. Cinmar, LLC, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023) (citation omitted); accord Keskinen, 2025 WL 851074, at *5 (collecting cases); see, e.g., Raffin v. Medicredit, Inc., No. CV154912GHKPJWX, 2016 WL 7743504, at *3 (C.D. Cal. Dec. 19, 2016) ("[D]istrict courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff **[*15]** in a **CIPA** action need not allege actual harm beyond the invasion of the private right conferred by the statute."). Accordingly, "a violation of a privacy right protected by California law is sufficient injury for standing purposes." Keskinen, 2025 WL 851074, at *5.[2]

Rad contends that the Ninth Circuit has found otherwise, citing Daghaly v. Bloomingdales.com, LLC, No. 23-4122, 2024 U.S. App. LEXIS 31929, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024). (Mem. at 19-20; Reply at 1-2). But *Daghaly* is an *unpublished* case which summarily observed that the plaintiff's injury allegations were "sparse," emphasizing that "she does not allege that she herself actually made any communications that could have been intercepted once she had accessed the website." Daghaly, 2024 U.S. App. LEXIS 31929, 2024 WL 5134350, at *1.[3] Thus, the court concluded that even if the *fact* of the plaintiff's visit to the defendant's website was "transmitted to one or more third parties, that transmission cannot without more provide the basis for a [**CIPA**] claim." Id. In Conohan's Complaint, he provided "more." For example, he asserts that the TikTok Software on Rad's Website "collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." (Compl. ¶ 10). The data includes "device and browser information, **[*16]** geographic information, referral tracking, and url tracking by running code or 'scripts' on the Website to send user details to TikTok." (Compl. ¶ 11). Additionally, Conohan alleges that the Software "scans every website for information, such as name, date of birth, and address ... so that TikTok can isolate with certainty the individual to be targeted." (Compl. ¶ 13). These allegations are more than sufficient to demonstrate standing at this stage of the case.

b. Trap and Trace Law

Rad contends that the California Trap and Trace Law, Cal. Penal Code § 638.51, does not apply to its Website. (Mem. at 21, 24-26). To the contrary, **CIPA** applies to devices or processes that record or capture certain information from a wire or electronic communication. Cal. Penal Code § 638.50(b)-(c). Section 638.50's language "indicates courts should focus less on the form of the data collector and more on the result." Greenley v. Kochava, Inc., 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023). Accordingly, as this court found in a similar case, "Plaintiff's

---

[2] While Rad identifies district cases that it contends have found otherwise (*e.g.* Reply a 3-4), the court finds that these Central District cases are on point and have the more compelling analyses.

[3] Rad also cites Jones v. Bloomingdales.com, LLC, 124 F.4th 535 (8th Cir. 2024). (Reply at 2). But this Eighth Circuit case was discussing the federal Electronic Communications Privacy Act, 18 U.S.C. § 2511, not **CIPA**.

allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51." *Moody v. C2 Educ. Sys. Inc., 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024)*.

Rad also argues that the California Trap and Trace Law applies only to in transit communications and third-party interceptions on telephone lines. (Mem. at 22-24; Reply at 7-11). **[*17]** But Rad cites § 629.51(b), which is not incorporated into the California Trap and Trace Law. Indeed, § 629.51 is part of Chapter 1.4—Interception of Wire, Electronic Digital Pager, or Electronic Cellular Communications, §§ 629.50-629.98—not Chapter 1.5—Invasion of Privacy, §§ 630-638.55. Moreover, by its explicit terms, the only provision of § 629.51 incorporated into Chapter 1.5 is § 629.51(a), not (b). See Cal. Penal Code § 638.50.

Finally, Rad complains that Conohan's case "effectively seeks to criminalize the Internet" because "it concerns the reception—not the interception—of online data exchanges and common website analytics tools used by website operators, under the novel theory that these technologies amount to illegal 'trap and trace' devices under section 638.51 of the California Invasion of Privacy Act." (Mem. at 2; *see id.* at 2-5, 22-26). But as the Northern District recently concluded in responding to a similar argument that "allowing this lawsuit to proceed could unsettle the basic operating rules of the Internet,"

> It may be, as Fandom contends, that users routinely disclose their IP addresses to third parties in the process of accessing a website, and that websites sometimes do not obtain users' consent for those practices through a Privacy Policy or Terms of Use. The Court's task is to interpret the law as the Legislature wrote it. The pen register statute is broadly **[*18]** written, and under California law, is to be interpreted broadly to protect privacy and to be applied to new techniques and technologies. That statute reflects the Legislature's judgment that an individual's consent is required before others may track certain addressing information in their electronic communications for non-law enforcement purposes. To the extent that Fandom believes the statute may impose too many burdens when applied to the realities of modern technologies, and that it is too unwieldy to obtain users' consent through disclosures of the practices at issue, the question of whether the statute's scope should be narrowed ultimately rests with the Legislature, not the courts. Plaintiffs have plausibly alleged that the Trackers operate as pen registers under the meaning of the statute, and that they were injured by being tracked in a way that they did not expect and to which they did not agree. That is sufficient at the pleadings stage.

*Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *6 (N.D. Cal. Oct. 21, 2024).

**IV**.

**CONCLUSION**

For the foregoing reasons, Rad Power Bike's **Motion to Dismiss** is DENIED. Rad SHALL ANSWER the Complaint within 14 days of the date of this Order. Fed. R. Civ. P. 12(a)(4)(A).

DATE: April 3, 2025

/s/ Pedro V. Castillo

PEDRO V. CASTILLO

UNITED STATES MAGISTRATE **[*19]** JUDGE

---